UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



ORBIT CORP,

and

GARY SIMON,

                    Plaintiffs,

v.                                        Civil No. 2:14cv607

FEDEX GROUND PACKAGE SYSTEM,
INC., d/b/a FEDEX HOME
DELIVERY,

                    Defendant.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss, filed by FedEx Ground Package System, Inc., ("Defendant" or "FedEx") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 6. Also pending before the Court are two associated motions addressing the fact that the brief in opposition to dismissal filed by Orbit Corp ("Orbit") and Gary Simon ("Simon," and collectively with Orbit, "Plaintiffs") exceeds the page limit established by this Court's local rules. ECF Nos. 10, 14; see E.D. Va. Loc. Civ. R. 7(F)(3) (limiting responsive briefs to thirty pages).

As to the briefing dispute, the Court accepts Plaintiffs' initial brief in opposition to the motion to dismiss; however, consistent with Plaintiffs' proposed amended brief, the Court

will not consider the pages in the original brief presenting a detailed recitation of the facts. Instead, the Court will rely on the facts incorporated by reference from the amended complaint. Such ruling **GRANTS in part, and DENIES in part,** both Defendant's motion to strike, ECF No. 10, and Plaintiffs' motion for leave to file an amended brief, ECF No. 14.[1]

### I. Factual and Procedural Background

As alleged in Plaintiffs' amended complaint, Orbit is a Virginia corporation which owns and operates trucking equipment. Am. Compl. ¶ 1, ECF No. 3. Gary Simon is the president of Orbit and acted as a FedEx driver performing home deliveries from November 2011 through May 2013. Id. Defendant FedEx is a Delaware corporation with its principle place of business in Pennsylvania. Id. ¶ 2.

In April of 2012, FedEx and Orbit entered into a written contract ("the Operating Agreement") whereby FedEx hired Orbit, through its president Gary Simon, to perform home delivery services of FedEx packages in Virginia. Id. ¶¶ 7, 30-35. The parties vigorously dispute whether the Operating Agreement and the parties' business relationship rendered Simon, and Orbit's other drivers, "employees" of FedEx or "independent

---

[1] The Court reaches such resolution, as opposed to merely accepting Plaintiffs' proposed amended brief, because such amended brief includes changes to the "Argument" section. Although such changes appear to be minor, because Defendant has not had an opportunity to respond to such modified argument, the Court considers the argument section of Plaintiffs' original brief.

2

contractors."     Plaintiffs'   amended   complaint,   however, alternatively seeks relief irrespective of which classification is deemed to apply.

Defendant filed the instant motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs opposed dismissal of the majority of the counts in the amended complaint, but affirmatively moved to withdraw Counts I, II, VI, and VII.     ECF No. 9, at 33. Defendant's motion is fully briefed and ripe for review.

## II. Standard of Review

### A. Subject Matter Jurisdiction – Rule 12(b)(1)

A party may, at any time, move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  The party asserting jurisdiction "has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### B. Plausible Right to Relief – Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.

Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery County, 684 F.3d 462, 467 (4th Cir. 2012) (quoting

4

_E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc._, 637 F.3d
435, 440 (4th Cir. 2011)).

### III. Discussion

#### A. Withdrawn Claims

Defendant's motion to dismiss invokes Rule 12(b)(1) to seek
dismissal of Count VII of the amended complaint, and invokes
Rule 12(b)(6) to seek dismissal of all remaining counts.   In
response to such motion, Plaintiffs affirmatively withdraw their
claims for relief contained in Counts I, II, VI and VII of the
amended complaint.   Accordingly, the Court hereby deems Counts
I, II, VI and VII **WITHDRAWN**, and Plaintiffs are foreclosed from
pursuing further relief on such grounds.

In addition, Plaintiffs' brief withdraws all allegations
that can be interpreted as asserting a claim for "wrongful
termination" of the Operating Agreement—a claim that the
Agreement requires be resolved through binding arbitration.   The
Court therefore deems **WITHDRAWN** all allegations that can be
construed as a wrongful termination claim, and Plaintiffs are
foreclosed from pursuing further relief from this Court on such
theory.

#### B.  Remaining Claims

#### 1. Count III - FLSA Overtime

In Count III, Plaintiffs advance an overtime compensation
claim under the Fair Labor Standards Act ("FLSA"), which

5

requires an employer to pay its <u>employees</u> additional compensation for any work-week in which an employee works more than forty hours. 29 U.S.C. § 207(a)(1). As recently explained by another judge of this Court:

> Generally, to assert a claim for overtime compensation pursuant to 29 U.S.C. § 207, "a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." <u>Butler v. DirectSat USA, LLC</u>, 800 F. Supp. 2d 662, 667 (D. Md. 2011). However, courts have expressed differing views regarding the level of factual detail required to be pled in an FLSA claim in order to survive a Rule 12(b)(6) motion to dismiss.
>
> In <u>Butler</u>, the Maryland District Court adopted a more lenient approach stating,
>
>> There would be little benefit to dismissing this claim and requiring Plaintiffs to amend to provide an estimate of the number of the overtime hours worked. The existing complaint details the types of work activities that occupied Plaintiffs' alleged overtime hours and provides Defendants with sufficient notice of the basis of the allegations to form a response. Thus, Plaintiffs have stated a plausible claim for their entitlement to overtime wages.
>
> <u>Id.</u> at 668. In <u>Rodriguez v. F & B Solutions LLC</u>, this Court adopted Butler's lenient approach, noting "that a record of the precise number of hours worked is normally in the possession of the employer and as such, can often be obtained through discovery." <u>Rodriguez v. F & B Solutions LLC</u>, 20 F. Supp. 3d 545, 547 (E.D. Va. 2014); <u>see also</u> <u>Pforr v. Food Lion, Inc.</u>, 851 F.2d 106, 108 (4th Cir. 1988) ("[A] plaintiff [need not] prove each hour of overtime work with unerring accuracy or certainty."); <u>Harder v. ARCO Welding, Inc.</u>, 3:11-cv-396, 2011 WL 5599396, at *3 (E.D. Va. Nov. 17, 2011) (citations omitted) ("To assert a claim for unpaid overtime wages, a plaintiff

> must properly allege: '(1) that he [or she] worked
> overtime hours without compensation, (2) the 'amount
> and extent' of the work 'as a matter of just and
> reasonable inference,' and (3) that [the employer]
> knew of the uncompensated overtime.'").

Seagram v. David's Towing & Recovery, Inc., 62 F. Supp. 3d 467,
474 (E.D. Va. 2014) (applying the "more lenient" standard as
outlined in Butler).

Here, applying the standard applied in Seagram and Butler,
the Court finds that plaintiff Simon has alleged sufficient
facts to state a plausible FLSA claim for unpaid overtime.
Although Simon fails to clearly allege the precise number of
hours he claims to have worked in a typical week, tending
instead to focus on the fact that he worked in excess of 14
hours per day without indicating how many days he worked each
week, the amended complaint: (1) asserts sufficient facts to
plausibly claim that Simon is an "employee" of FedEx who did not
receive overtime compensation; (2) asserts sufficient facts to
plausibly claim that Simon was routinely required to work more
than forty hours per week; (3) "details the types of work
activities that occupied Plaintiffs' alleged overtime hours";
and (4) "provides Defendants with sufficient notice of the basis
of the allegations to form a response." Butler, 800 F. Supp. 2d
at 668; see Am. Compl. ¶¶ 26, 42-50. Additionally, Plaintiffs
sufficiently allege that Defendant was aware of the number of
hours Simon worked each week. Am. Compl. ¶¶ 46, 58, 144.

Although Simon has alleged a plausible FLSA claim for overtime compensation, Orbit has not. Even applying the forgiving standard set forth in <u>Seagram</u> and <u>Butler</u>, Orbit fails to state a plausible right to relief as it improperly attempts to assert a FLSA claim either on behalf of a corporation, or on behalf of unnamed individuals that are not a party to this action. Both Orbit's lack of standing and its failure to advance any clear factual allegations with respect to unidentified persons warrants dismissal of Count Three as to Orbit. <u>Cf.</u> <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 173 (1989) (recognizing that although an individual with an FLSA claim may pursue relief on his own behalf and on behalf of others "similarly situated," amendments to the FLSA enacted by Congress in 1947 eliminated "representative actions" in an effort to "free[] employers of the burden" of such actions) (emphasis added). Defendant's motion to dismiss Count III is therefore **GRANTED in part** (as to Orbit), and **DENIED in part** (as to Simon).

### 2. Count IV – "Unlawful Deductions" Va. Code § 40.1-29

In Count IV, Plaintiffs assert that Defendant made "unlawful deductions" from Plaintiffs' pay in violation of § 40.1-29 of the Virginia Code. Defendant's motion to dismiss asserts that there is no private right of action under such code section, with such statute only establishing a right to pursue

relief through the Virginia Commissioner of Labor and Industry ("the Commissioner"). Plaintiffs' response does not challenge Defendant's statutory interpretation, but instead curiously claims that Count IV alleges a breach of the Operating Agreement (not a § 40.1-29 claim) even though such count, excluding its caption, <u>twice</u> asserts that Defendant's actions were "in violation of Va. Code § 40.1-29." Am. Compl. ¶¶ 113, 116.

Having carefully considered the parties' briefs and the authorities cited therein, it appears undisputed that Plaintiffs lack a private cause of action under § 40.1-29. <u>See</u> <u>School Bd.</u> <u>of City of Norfolk v. Giannoutsos</u>, 238 Va. 144, 147 (1989) ("One of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise."); <u>Pallone v. Marshall Legacy Inst.</u>, 97 F. Supp. 2d 742, 746 (E.D. Va. 2000) (indicating that § 40.1-29 creates a scheme under which "the Commissioner may pursue the employee's claim for unpaid or untimely paid wages," and that such remedy is "the sole remedy provided by the Act" (citing <u>Giannoutsos</u>, 238 Va. at 147; <u>Eslami v. Global One Commc'ns,</u> <u>Inc.</u>, 48 Va. Cir. 17, 19 (1999))). Moreover, to the extent Plaintiffs argue in their brief in opposition to dismissal that Count IV actually alleges a claim pursuant to an unidentified contract provision or unidentified provision of Pennsylvania

law, such attempted recharacterization of Count IV fails on its face because the amended complaint does not identify any other theory of recovery that would give Defendant "fair notice" of the nature of the claim. Twombly, 550 U.S. at 555. Count IV, which is clearly identified as a claim advanced pursuant to the Virginia Code, is therefore **DISMISSED**.

### 3. Count V – "Declaratory Judgment"

In Count V, Plaintiffs seek a declaratory judgment holding that, "pursuant to the laws of the United States and the State of Virginia," Am. Compl. ¶ 122, Plaintiffs were "employees" of Defendant and not "independent contractors." Defendant seeks dismissal of such count, arguing that while some of Plaintiffs' claims may ultimately turn on Plaintiffs' classification as an "employee" or an "independent contractor," a separate count seeking such determination is improper because all of the harm Plaintiffs allege has already occurred, leaving no live dispute that could impact future behavior.

It is well-established that a district court's exercise of its discretionary authority to issue a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir.

1996) (omission in original) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). When, in contrast, "claims and rights asserted have fully matured, and the alleged wrongs have already been suffered," declaratory judgment is generally unavailable. Hanback v. DRHI, Inc., --F. Supp. 3d--, 2015 WL 1137584, at *4-5 (E.D. Va. Mar. 11, 2015) (internal quotation marks and citations omitted); see 28 U.S.C. § 2201(a) (providing federal courts discretionary authority to issue declaratory judgments "[i]n a case of actual controversy within its jurisdiction"); Tapia v. U.S. Bank, N.A., 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (explaining that declaratory judgments are "untimely if the questionable conduct has already occurred or damages have already accrued").[2] This is so because when a contract has already been breached causing damages, or damages otherwise flowing from a business transaction have already accrued, "'there is no guidance' that can be offered via a declaratory judgment to steer" the parties' future conduct with respect to such contract or business transaction. Hanback, 2015 WL 1137584, at *4 (quoting The Hipage Co., Inc. v. Access2Go, Inc., 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)).

---

[2] Although Plaintiffs' claim is governed by the federal Declaratory Judgment Act, Virginia law appears in conformity with the application of such Act. See Bd. of Supervisors v. Hylton Enters., 216 Va. 582, 585 (1976) ("[W]here claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy." (citing Liberty Mutual Ins. Co. v. Bishop, 211 Va. 414, 421 (1970))).

The Court therefore agrees with Defendant that, on these case specific facts, the parties' dispute does not present an ongoing controversy suitable for resolution by declaratory judgment. Plaintiffs' own allegations document the end of the parties' business relationship, demonstrating that any contract breaches or other alleged harm has already occurred, and any relief owed to Plaintiffs will be fully adjudicated through the resolution of the other affirmative claims set forth in the amended complaint. See Bagley v. Wells Fargo Bank, N.A., 3:12cv617, 2013 WL 350527, at *7 (E.D. Va. Jan. 29, 2013) (granting a motion to dismiss a declaratory judgment count because there was "no reasonably certain future conduct to be prevented or mandated" and the determination of the parties' rights would be "addressed by the underlying contract claim"). Count V of the amended complaint is therefore **DISMISSED**.

### 4. Count VIII – "Breach of Contract"

Count VIII of the amended complaint asserts that, even if Plaintiffs are determined to be "independent contractors," Defendant breached the parties' Operating Agreement. At the outset, it should be noted that while Plaintiffs' breach of contract claim expressly incorporates all of the factual allegations that precede it, the lengthy "Factual Background" section of Plaintiffs' amended complaint includes so many references to Defendant's various acts that Plaintiffs assert

were unfair or spiteful that it is difficult to unravel on what basis Plaintiffs purport to allege a breach of the Operating Agreement.  Moreover, even within Count VIII, Plaintiffs' specifically enumerated breach of contract count, Plaintiffs fail to clearly articulate which contractual duties were purportedly breached by Defendant.  Such failure to clearly allege contract violations appears to result from the fact that, as acknowledged by Plaintiffs in their briefing on the pending motion, the Operating Agreement focuses primarily on Plaintiffs' obligations, including few express duties required by Defendant. Plaintiffs' theory of recovery on Count VIII therefore remains largely elusive, particularly to the extent that Plaintiffs seek to assert that Defendant's failure to adhere to internal policies or "customary" practices constitute a breach of the Operating Agreement, as the Agreement itself appears silent as to many of the topics of which Plaintiffs complain (ex. route planning, package preparation, quality control, etc.).[3]

After considering the varied allegations in the amended complaint, the only asserted breach of the Operating Agreement that states a "plausible" right to relief by alleging facts that

---

[3] For example, ¶ 1.7 of the Operating Agreement requires <u>Plaintiffs</u> to prepare and deliver daily logs to Defendant, but appears to provide no duty, mandatory or discretionary, on the part of Defendant. Similarly, ¶ 1.10 of the Operating Agreement does not appear to include any promises from Defendant to Plaintiffs, but instead references promises previously made by Defendant <u>to other companies and customers</u>, which even if breached, do not appear to provide a basis for recovery by Plaintiffs.

"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555, is Plaintiffs' assertion that Defendant unreasonably withheld approval of the proposed assignment/sale of Plaintiffs' FedEx Primary Service Areas ("PSAs") to a third-party. Specifically, paragraph 15 of the Operating Agreement expressly discusses "Assignment," and by its terms gives Plaintiffs "the right to assign" their rights and obligations to a "replacement contractor acceptable to [Defendant]." ECF No. 3-1, ¶ 15. Moreover, "Addendum 16" to the Operating Agreement provides further clarification regarding assignments, indicating that Defendant's consent to an assignment will not be "unreasonably withheld." Id. at Addendum 16 ¶ 7. Plaintiffs' amended complaint asserts a plausible claim that Defendant violated such contractual provisions by unreasonably withholding approval of Defendant's attempted assignment.

In contrast to the above clearly articulated and plausible breach of contract claim, the amended complaint's various references to contract provisions that are limited to defining Plaintiffs' obligations, Defendant's purported failures to follow corporate policies and practices that Plaintiffs assert are in place at other FedEx facilities, vague references to "oral contracts," unfair dealing, inducement, and Defendant's purported failure to provide "customary" temporary help and/or

14

to "qualify" individuals Plaintiffs purportedly intended to hire as Orbit employees,[4] all fail to state a plausible right to relief.   Defendant's motion to dismiss is therefore **GRANTED in part and DENIED in part** with respect to Count VIII, with such denial limited to Plaintiffs' claim that Defendant breached the Operating Agreement by unreasonably refusing to approve Plaintiffs' proposed assignment/sale.

### 5. Count IX & X - Tortious Interference with Purchase Contract and Business Expectancy

Counts IX and X of the amended complaint assert that Defendant tortiously interfered with Plaintiffs' contract and/or business expectancy involving the assignment of Plaintiffs' rights and obligations under the Operating Agreement, to include the sale of their vehicles and FedEx PSAs to a third-party. Although Plaintiffs and Defendant disagree as to whether Virginia or Pennsylvania law apply to such claims, this Court finds such choice of law dispute to be immaterial, as Plaintiffs fail to state a tort claim under either forum's law.

---

[4] While the Operating Agreement clearly provides express qualifications for any employees hired by Plaintiffs, it does not appear to discuss a process by which Defendant "approved" or otherwise passed judgment on proposed Orbit employees.   Moreover, even assuming that FedEx did engage in a process to pass judgment on proposed Orbit employees, the amended complaint does not identify any prospective employees, does not assert that they met all of the contractual requirements to be hired by Orbit, and does not explain what steps Defendant purportedly took to improperly block their hire nor which contractual provision(s) was purportedly violated.   In short, the amended complaint does not state a plausible breach of contract claim based on Defendant's alleged failure to "approve" Plaintiffs' proposed employees.

First, to the extent Plaintiffs assert that FedEx committed a tort by making false statements intending to scare off Plaintiffs' prospective assignee/buyer, such allegations fail to state a plausible tort claim because Plaintiffs admit that Defendant's attempted interference with Plaintiffs' contract and/or expectancy failed to dissuade the prospective buyer.  Am. Compl. ¶ 76.  More specifically, FedEx's inability to deter the third-party buyer results in Plaintiffs inability to allege causation and damages.  See Chaves v. Johnson, 230 Va. 112, 120, 333 S.E.2d 97, 102 (1985) (indicating that elements of tortious interference under Virginia law include both causation and "resultant damage"); CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004) (indicating that, under Pennsylvania law, "a tortious interference claim does not accrue until, at least, the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the defendant's conduct") (citations omitted).  Such attempted "interference" therefore fails to support a plausible right to relief.[5]

Second, to the extent Plaintiffs attempt to allege a tort through arguing that FedEx's failure to "approve" Plaintiffs' prospective buyer breached an independent common law duty, such

---

[5] As discussed below, this Court does not take a position as to whether Virginia or Pennsylvania courts would adopt a "stranger" to the contract rule that would bar such a tort claim even if the alleged attempts to dissuade the prospective buyer had been successful.

16

claim is belied by the record as it is undisputed that FedEx had a contractual duty to consider any proposed assignment and provide its "consent or lack thereof to any such assignment or transfer" within 30 days of receipt of a written notice describing "the nature, type and scope of the proposed assignment or transfer." ECF No. 3-1, at Addendum 16 ¶ 7. Stated differently, FedEx was not "interfering" with a contract purporting to assign/sell a FedEx PSA to a third-party because Plaintiffs had previously agreed that the only process through which they could complete such assignment/sale required FedEx's participation and approval. Accordingly, Plaintiffs fail to plausibly allege any harm flowing from "interference" that was violative of an independent common law duty.

Reaching such conclusion does not require this Court to resolve complex questions of state law on sparse briefing with respect to whether Pennsylvania or Virginia would adopt the "stranger" to the contract rule that has been adopted by West Virginia and various other states.[6]   Rather, irrespective of

---

[6] The "stranger" to the contract rule espoused by FedEx categorically precludes a tortious interference claim when the alleged tortfeasor is "related" to the third-party contract/relationship. See Childers Oil Co. v. Exxon Corp., 960 F.2d 1265, 1271 (4th Cir. 1992) (concluding that, pursuant to West Virginia law, "[t]ortious interference claims lie only against a party that is a stranger to the relationship"); cf. Kernaghan v. BCI Commc'ns, Inc., 802 F. Supp. 2d 590, 596-97 (E.D. Pa. 2011) (noting the apparent absence of precedent addressing "whether the Pennsylvania Supreme Court would adopt and apply the 'stranger' rule to a tortious interference claim," and ultimately declining to hold that Pennsylvania courts would adopt such rule).

whether Pennsylvania would adopt such rule, the case-specific
allegations demonstrate that Pennsylvania courts would either
treat Counts IX and X as disguised breach of contract claims,
see Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC,
784 F.3d 177, 186 (3d Cir. 2015) (discussing Pennsylvania's
common law "gist-of-the-action doctrine" which is a policy based
doctrine that requires courts to engage in a "factually
intensive inquiry as to the nature of a plaintiff's claims" in
an effort to ensure that tort recovery is not permitted "for the
mere breach of contractual duties" (internal quotation marks and
citations omitted)), or alternatively, would conclude that such
claims fail to allege that FedEx acted without justification
when it evaluated and passed on the suitability of Plaintiffs'
proposed buyer, see CGB Occupational Therapy, 357 F.3d at 384-85
(indicating that, under Pennsylvania law, an element of a
tortious interference claim is that the alleged intervener acted
without "privilege or justification").

    Similarly, although Plaintiffs assert that Virginia law is
inapplicable to these counts, under Virginia law, one of the
elements of a tortious interference claim requires proof of
intentional interference with the third-party contract. See
Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 558-59,
708 S.E.2d 867, 870 (2011) (indicating that the third element of
such a claim requires "intentional interference" with the

asserted contract or expectancy, and favorably citing the description of the cause of action in the Restatement (Second) of Torts, which includes the requirement that the alleged tortfeasor "intentionally and improperly interfere[d]" with the performance of a third-party contract); Duggin v. Adams, 234 Va. 221, 225-26, 360 S.E.2d 832, 835 (1987) ("[O]ne who intentionally interferes with another's contractual rights is subject to tort liability." (emphasis added) (citing Chaves, 230 Va. at 120, 335 S.E.2d at 102)). Notably, Plaintiffs' own factual allegations clearly reveal that Plaintiffs lack any basis for challenging FedEx's right, or more accurately stated, FedEx's obligation, to participate in the third-party contract through evaluating and passing judgment on the prospective third-party buyer/assignee.[7] While Plaintiffs are unquestionably dissatisfied with the end-result of FedEx's contractually required evaluation, this Court is unaware of any common law duty that is so broad that it would preclude a party that is

---

[7] Moreover, to the extent that Plaintiffs' claims, analyzed under Virginia law, assert tortious interference with a mere expectancy, or tortious interference with a third-party contract viewed by the law to be the equivalent of an "expectancy" because it was contingent upon a yet to be received "approval" from FedEx, Virginia law requires allegations that the purported interference was effectuated through "improper means." Duggin, 234 Va. at 226-28, 360 S.E.2d at 836-37. While a variety of tortious, illegal, and unethical acts constitute "improper means," the Virginia Supreme Court has expressly recognized that such concept does not extend to "actions solely motivated by spite, ill will and malice," Dunn, McCormack & MacPherson, 281 Va. at 560, 708 S.E.2d at 871, which appear to be the alleged motivators behind Defendant's conduct as asserted in the amended complaint.

required by contract to consider and pass judgment on a prospective assignment from considering and passing judgment on such assignment.  Stated differently, FedEx has not interfered in the affairs of another as: (1) in light of FedEx's pre-existing contractual right to evaluate the proposed assignee, FedEx's evaluation and judgment is by definition not "interference"; and (2) the "affairs" at issue are not merely the affairs of "another," but rather, are also the affairs of FedEx to the extent that FedEx has both a contractually recognized interest in such affairs and a contractually recognized right to protect such interest.[8]

In sum, because the only conduct engaged in by FedEx that allegedly caused Plaintiffs any harm was FedEx's "disapproval" of Plaintiffs' prospective assignee/buyer, Plaintiffs have

---

[8] The Court notes that even if Plaintiffs have otherwise pled sufficient facts to state a tortious interference claim under Virginia law, the face of the Operating Agreement (which is incorporated into the amended complaint) conclusively indicates that FedEx acted with "justification or privilege" when it exercised its contractual right to evaluate and pass judgment on the proposed assignee/buyer.  See Chaves, 230 Va. at 120, 335 S.E.2d at 102 (discussing the affirmative defense of "justification or privilege" under Virginia law; Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (indicating that in "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)").  While Defendant does not expressly characterize its argument as invoking an affirmative defense, Defendant's assertion in support of dismissal that FedEx cannot have interfered with a third-party contract in light of the fact that the Operating Agreement "specifically provides" FedEx authority to evaluate proposed assignments is sufficient to invoke such defense.  ECF No. 7, at 27.  Therefore, to the extent Virginia law applies, Counts IX and X are alternatively dismissed based on the facial applicability of such affirmative defense.

failed to state a cause of action in tort. FedEx had a bargained for contractual role to play in the evaluation and approval/disapproval of Plaintiffs' asserted third-party contract/expectancy, and while Plaintiffs have stated a plausible breach of contract claim based on FedEx's failure to "approve" the proposed assignment/sale, Plaintiffs fail to allege that FedEx's exercise of its bargained for right to evaluate and pass judgment on the proposed third-party violated any common law duty recognized by Pennsylvania or Virginia law. Counts IX and X are therefore **DISMISSED**.

### 6. Count XI – "Personal Injury"

Count XI of the amended complaint, the final count that has not been withdrawn by Plaintiffs, asserts that Defendant breached a duty to provide a safe work environment for subcontractors and/or a general duty not to harm plaintiff Simon.[9]   Simon alleges damages in the form of "mental and physical anguish" that resulted from, among other things, Defendant's intentional "verbal abuse, harassment, [and] sabotage of Plaintiff's business operations." ECF No. 3, ¶¶ 174-77. Although far from clear, this broadly phrased tort count appears to attempt to assert a claim for intentional infliction of emotional distress ("IIED").

---

[9]  It appears from the context of the allegations in the amended complaint that Count XI is asserted only by plaintiff Simon.

It is well-established that an independent IIED tort claim arises under Virginia law only if the conduct at issue "was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974). The Virginia Supreme Court has further explained that such cause of action is "not favored" under Virginia law and that "it is insufficient for a defendant to have 'acted with an intent which is tortious or even criminal'"; rather, "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Russo v. White, 241 Va. 23, 27 (1991) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); see Harris v. Kreutzer, 271 Va. 188, 204, 624 S.E.2d 24, 34 (2006) ("Insensitive and demeaning conduct does not equate to outrageous behavior as set [forth] by [Virginia's] caselaw.").[10]

In Pennsylvania, while it does not appear that the state's highest court has expressly recognized the tort of IIED, such court has cited to § 46 of the Restatement (Second) of Torts "as setting forth the minimum elements necessary to sustain such a

---

[10] As with Counts IX and X, Plaintiffs assert that Count XI is governed by Pennsylvania law, not Virginia law.

cause of action." Taylor v. Albert Einstein Med. Ctr., 562 Pa.
176, 181, 754 A.2d 650, 652 (2000) (citing Kazatsky v. King
David Mem'l Park, Inc., 515 Pa. 183, 190, 527 A.2d 988, 991
(1987)).    The availability of recovery under such standard is
"highly   circumscribed,"   and   consistent   with   the   Virginia
standard, requires that the asserted conduct be "'regarded as
atrocious, and utterly intolerable in a civilized community,'"
such that if the facts were recited to a member of the community
they would "'arouse his resentment against the actor, and lead
him to exclaim, "Outrageous!"'"    Kazatsky, 515 Pa. at 191, 527
A.2d at 991 (quoting Restatement (Second) of Torts § 46 cmt. d);
cf. 1 Summ. Pa. Jur. 2d Torts § 10:48 (2d ed.) (indicating that,
under Pennsylvania law, "it is extremely rare to find conduct in
the workplace rising to the necessary level of outrageousness"
and that a tort action generally does not arise even in the face
of "unjustified criticism, snubs, betrayed confidences," or in
situations where "a generally oppressive work environment" is
created in an effort to "force the employee to quit or retire").

Here, regardless of whether Virginia law or Pennsylvania
law applies, Simon fails to state a plausible right to relief as
the   allegations   of   verbal   abuse,   harassment,[11]   sabotage   of

---

[11] Although not restated in Count XI, Simon does allege earlier in the
amended complaint that a FedEx manager made an internal report that
falsely accused Simon of engaging in "workplace violence."   However,
it appears from the context of Simon's allegations that the false
report accused Simon of an angry exchange of words that made the

business operations, etc., fail to rise to the level of atrocious and utterly intolerable behavior. Additionally, while Simon plainly alleges that a FedEx manager's personal dislike for him motivated her actions in an effort to damage his reputation and/or ultimately end his company's business relationship with FedEx, the amended complaint fails to allege facts suggesting that she acted with "the specific purpose of inflicting emotional distress" or that she "knew or should have known that emotional distress would likely result." Womack, 215 Va. at 342, 210 S.E.2d at 148; see 1 Summ. Pa. Jur. 2d Torts § 10:54 (2d ed.) (indicating that, under Pennsylvania law, a plaintiff must prove that the actor either "intended to inflict severe emotional distress" or "knew that such distress was certain, or substantially certain, to follow from the defendant's actions"); Restatement (Second) of Torts § 46 cmt.

---

complainant fear for her safety (as opposed to alleging physical violence). First, such conduct fails to rise to the level necessary to be considered "outrageous." See Johnson v. Plaisance, 25 Va. Cir. 264, 268 (1991) (indicating that the plaintiff's allegations that she was terminated from her nursing job based on a false report that she had been drinking, a report that was relayed to the State Board of Nursing, was "not sufficiently outrageous to support" an IIED claim); 1 Summ. Pa. Jur. 2d Torts § 10:48. Second, Simon asserts that such false report was intended to harm his reputation within FedEx, not to cause him emotional distress. See Womack, 215 Va. at 342, 210 S.E.2d at 148 (discussing the intent required to succeed on an IIED claim). Third, Simon fails to directly assert that such false report contributed to his claimed injury (possibly because he acknowledges that, upon investigation, FedEx determined that the allegations were in fact baseless, ECF No. 3, ¶ 65). Accordingly, even when considered in conjunction with the other alleged workplace harassment, Simon's reference to the false internal report fails to state a plausible IIED claim.

i. (same). Accordingly, Defendant's motion to dismiss is **GRANTED** as to Count XI.[12]

### IV. Conclusion

As set forth above, the Court **GRANTS in part, and DENIES in part,** Defendant's motion to strike Plaintiffs' brief in opposition. ECF No. 10. Similarly, the Court **GRANTS in part, and DENIES in part,** Plaintiffs' motion for leave to file an amended brief. ECF No. 14.

At Plaintiffs request, Counts I, II, VI and VII of the amended complaint are deemed **WITHDRAWN**, and Plaintiffs are foreclosed from pursuing further relief on such grounds. Similarly, to the extent any of Plaintiffs' remaining allegations can be interpreted as advancing a claim for "wrongful termination" of the Operating Agreement, such

---

[12] To the extent Simon intends Count XI to advance a claim based on a tort theory other than IIED, it is unclear from the allegations in the amended complaint what such theory may be, and thus, there are insufficient facts to state a plausible claim and permit Defendant the opportunity to provide a meaningful response. Such count does not appear to attempt to assert negligent infliction of emotional distress ("NIED") as Simon alleges intentional, not negligent, conduct. Moreover, he does not appear to satisfy the other elements of an NIED claim under either Virginia or Pennsylvania law. See Toney v. Chester Cnty. Hosp., 614 Pa. 98, 117, 36 A.3d 83, 95 (2011) (indicating, in an opinion of an evenly divided court, that an NIED claim absent physical impact (or near impact) to the plaintiff or a close relative of the plaintiff requires a "special relationship" that carries with it the "implied duty to care for the plaintiff's emotional well-being"); Va. Prac. Tort and Personal Injury Law § 11:4 (discussing the difference between an immediate manifestation of "physical injury" resulting from a traumatic event and the subsequent development of physical manifestations of emotional disturbances, such as "anxiety disorder"); Myseros v. Sissler, 239 Va. 8, 12, 387 S.E.2d 463, 466 (1990) (same).

allegations are deemed **WITHDRAWN**, and Plaintiffs are foreclosed from pursuing further relief on such theory.

As to the remaining Counts in the amended complaint, Defendant's 12(b)(6) motion to dismiss for failure to state a claim is **GRANTED** as to Counts IV, V, IX, X and XI. ECF No. 6. Furthermore, Defendant's 12(b)(6) motion is **GRANTED in part, and DENIED in part**, as to Counts III and VIII.

In determining whether the above dismissals are with prejudice or without prejudice, a determination that is within this Court's discretion, Carter v. Norfolk Cmty. Hosp. Ass'n, Inc., 761 F.2d 970, 974 (4th Cir. 1985), the Court has considered the following: (1) Plaintiffs, who are represented by counsel, have already once filed an amended complaint, although such amendment was not in response to a motion to dismiss; (2) while Plaintiffs have informally requested leave to file a second amended complaint within their brief in opposition to dismissal, they have not filed a separate motion seeking leave to amend, nor have they, with the exception of Count III, indicated how any pleading deficiencies can be cured through amendment;[13] (3) as to their tort claims (Counts IX, X, and XI)

---

[13] In the opening paragraph to their brief in opposition, Plaintiffs broadly state their request for leave to amend in the event that the Court finds any of Defendant's arguments in support of dismissal to be well-founded. ECF No. 9, at 1. Thereafter, the only specific claim on which Plaintiffs indicate their desire/ability to advance supplemental facts is Count III, the FLSA claim that this Court concluded was not factually deficient as to Defendant Simon. Id.

Plaintiffs have failed to advance any reasoned opposition to the pending dismissal motion, instead relying on the contention that Pennsylvania substantive law governs such claims without setting forth the asserted Pennsylvania standard even at a cursory level, see ECF No. 9, at 33; and (4) the primary basis for the dismissal of Counts III, IV, V, IX and X of the amended complaint is not the lack of sufficient factual allegations, but rather, is the fact that Plaintiffs' own allegations demonstrate that relief is unavailable on the legal theories advanced therein.

Considering all of the above, the partial dismissal of Count III, and the dismissal of Counts IV and V are with prejudice. The partial dismissal of Count VIII and the dismissal of Counts IX, X, and XI are without prejudice to Plaintiffs' right to file a formal motion seeking leave to file a second amended complaint.[14] If Plaintiffs elect to file such a

---

[14] Both Counts VIII and XI are dismissed because the factual allegations fail to state a plausible right to relief and/or fail to put Defendant on notice of the nature of the claim. Such counts are therefore potentially subject to re-pleading. As to Counts IX and X, it appears far less likely that such counts can be recast in order to state a claim on which relief can be granted based on the facts as asserted by Plaintiffs (including, but not limited to, FedEx's contractual right to participate in the assignment process). However, out of an abundance of caution, the Court finds that the best approach is to dismiss Counts IX and X without prejudice. See Ostrzenski v. Seigel, 177 F.3d 245, 253 (4th Cir. 1999) (indicating that, in cases where the plaintiff has not had the opportunity to amend the complaint in response to identified deficiencies, the preferred course is to dismiss claims that may be subject to re-pleading without prejudice "'even though the court doubts that plaintiff will be able to overcome

motion, it shall be filed no later than **August 7, 2015,** and should be accompanied by a supporting brief, which includes as an exhibit Plaintiffs' proposed second amended complaint. If Plaintiffs elect not to pursue further amendment within the time-period set forth herein, the partial dismissal of Count VIII and the dismissal of Counts IX, X and XI shall become dismissals with prejudice, and Defendant shall have until **August 21, 2015,** to file a responsive pleading.

The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mss&

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 30 , 2015

---

the defects in his initial pleading'" (quoting 5A Wright & Miller, Federal Practice and Procedure § 1357, at 360-67 (2d ed. 1990))). This Court, of course, will not ultimately grant leave to amend if any subsequent proposed amendment is determined to be futile. Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).