**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ORBIT CORP,**

**and**

**GARY SIMON,**

        **Plaintiffs,**

**v.**                                                    **Civil No. 2:14cv607**

**FEDEX GROUND PACKAGE SYSTEM,**
**INC., d/b/a FEDEX HOME DELIVERY,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment, filed by FedEx Ground Package System, Inc., ("Defendant" or "FedEx"). ECF No. 38. After briefing was completed on the summary judgment motion, FedEx filed a request for oral argument. ECF No. 62. Shortly after such request was filed, plaintiffs Orbit Corp ("Orbit") and Gary Simon ("Simon," and collectively with Orbit, "Plaintiffs") filed a response to Defendant's oral argument request asking that the Court deny the request for oral argument unless the Court requires additional clarity regarding the issues and arguments presented. ECF No. 63. Consistent with Plaintiffs' request, the Court determines that oral argument is unnecessary. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).

## I. Factual and Procedural Background

Orbit was organized as a Virginia corporation on February 27, 2012, with Simon as its President and sole shareholder. Def.'s Statement of Material Undisputed Facts ¶ 10 ("Def.'s SUF"), ECF No. 39; Pls.' Resp. to Def.'s SUF ¶ 10, ECF No. 45. Defendant FedEx is a Delaware corporation with its principal place of business in Pennsylvania. Second Am. Compl. ¶ 2, ECF No. 26; Answer ¶ 2, ECF No. 27.

On April 25, 2012, FedEx and Orbit entered into a written contract, referred to as the Operating Agreement ("OA"), whereby Orbit agreed to provide the final delivery leg for FedEx packages in the 23455 Zip Code in Virginia Beach, Virginia. Def.'s SUF ¶ 15. The OA refers to the contractor's delivery Zip Code as its Primary Service Area ("PSA"). OA ¶ 6, ECF No. 3-1. The OA further provides that the "initial term" of the contract extends "one year" from the date the OA is signed, with the OA "automatically renew[ing] for successive terms of one year each" unless either party provides the other with "notice of non-renewal in writing at least 30 days prior to the expiration" of the annual term. Id. ¶ 8.

Relevant to the disputes at issue in this case, the terms of the OA state that Orbit is "responsible for exercising independent discretion and judgment to achieve the business objectives and results" necessary to fully service Orbit's PSA,

2

further stating that "no officer, agent, or employee of [FedEx] shall have the authority to prescribe hours of work, whether or when the Contractor is to take breaks, what route the Contractor is to follow, or other details of performance." Id. ¶ 1.14. Moreover, Addendum 16 to the OA, which was also executed by Simon on behalf of Orbit on April 25, 2012, states that "Contractor agrees that neither it nor any of its Personnel are to be treated as or considered to be [FedEx's] employees for any purpose." Id. Addendum 16.

On August 21, 2012, four months into Orbit's tenure as a FedEx contractor, Orbit purchased the rights to service a second PSA in the City of Virginia Beach (Zip Code 23451) from another company acting as a FedEx contractor. Def.'s SUF ¶¶ 22, 24. On August 22, 2012, Orbit executed an Addendum to the OA reflecting its acquisition of such second PSA. Id.

On February 1, 2013, Orbit received a "Contract Non-Renewal Review Notification Letter" from FedEx indicating that Orbit was being "considered for non-renewal." ECF No. 40-6. On March 1, 2013, FedEx notified Simon in person and by letter that "Orbit Corp.'s contract will not be renewed after its current term." ECF No. 40-7; Def.'s SUF ¶ 34.

After receiving the non-renewal notice, Orbit marketed its routes and assets to Barry Taylor, Esq. (Mr. Simon's friend and family attorney) and to Simon's sister. Def.'s SUF ¶ 43. It is

3

undisputed that FedEx did not approve the transfer of Orbit's PSAs to Mr. Taylor's company, and that FedEx did approve the transfer to a company owned by Simon's sister.

The instant civil action was initiated by the filing of a complaint, ECF No. 1, and shortly thereafter, Plaintiffs filed a more robust amended complaint advancing numerous legal claims. ECF No. 3.  Defendant filed a motion to dismiss the amended complaint, which was granted in part, and denied in part, by a detailed Memorandum Opinion issued by this Court.  ECF No. 20. Plaintiffs then filed a motion for leave to file a second amended complaint, which was opposed by Defendant. ECF Nos. 21, 24.  By written Order, the motion for leave to amend was granted in part, and denied in part.  ECF No. 25.  Following such ruling, three grounds for relief remained: "Count One – Fraudulent Misrepresentation"; "Count Two – Violations of Overtime Provisions Under the Fair Labor [] Standards Act"; and "Count Three – Breach of Contract."  ECF No. 26.

Near the close of discovery, Defendant filed the now-pending motion for summary judgment seeking a ruling in Defendant's favor as to all three remaining grounds for relief. ECF Nos. 38, 39.  Plaintiffs submitted various filings in opposition, ECF Nos. 45-60, to include a brief in opposition to summary judgment and multiple exhibits.  While Plaintiffs oppose summary judgment on Counts One and Three, they affirmatively

state in written submissions to the Court that "Count[] 2 the Fair Labor Standard Act claim is hereby withdrawn." ECF No. 60. Accordingly, the Court deems "Count Two" **WITHDRAWN,** and Plaintiffs are foreclosed from pursuing further relief in this case on such legal theory.[1] The dispute regarding Counts One and Three is ripe for review.

## II. Standard of Review

The Federal Rules of Civil Procedure provide that a district court "shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248; see Jacobs, 780 F.3d at 568.

---

[1] Even in the absence of such withdrawal, Defendant's filings with the Court demonstrate FedEx's entitlement to Summary Judgment on Ground Two.

Rule 56(c) of the Federal Rules of Civil Procedure outlines the applicable procedure for pursuing, and defending against, summary judgment, explaining as follows:

> **(c) Procedures.**
> **(1) *Supporting Factual Positions*.** A party asserting that a fact cannot be or is genuinely disputed <u>must support the assertion by:</u>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (emphasis added). Rule 56 further states that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court has discretion to "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). When the moving party has met its burden to show that there is insufficient evidence to support the nonmoving party's case, the burden then shifts to the

6

nonmoving party to identify genuine and material factual disputes. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In such circumstances, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must generally set forth specific facts, supported by documents, affidavits, or other record materials illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986); Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015). The evidence presented by the nonmovant must be "more than a scintilla" of evidence and the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation marks and citations omitted). Although the Court is prohibited from "weighing the evidence" or making credibility findings at the summary judgment stage, the Court is required to review the evidence presented and "'determine whether there is a genuine issue for trial.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson, 477 U.S. at 249). In making such determination, the Court considers the evidence presented by the parties "'in the light most favorable to the' nonmoving party." Jacobs, 780 F.3d at 568 (quoting Tolan, 134 S. Ct. at 1866).

7

## III. Discussion

### A. Count One – "Fraudulent Misrepresentations"

Plaintiffs' first claim asserts that FedEx knowingly made false representations about the parties' business relationship in order to induce Simon/Orbit to enter into the OA. The parties both properly acknowledge that Virginia law governs such tort claim.

Pursuant to Virginia law, "a 'false representation of a material fact, constituting an inducement to the contract, on which [a party] had a right to rely, is . . . ground for an action for damages in a court of law.'" Augusta Mut. Ins. Co. v. Mason, 274 Va. 199, 204 (2007) (quoting George Robberecht Seafood, Inc. v. Maitland Bros. Co., 220 Va. 109, 111–12 (1979)). However, in a focused effort to "avoid turning every breach of contract into a tort," the Supreme Court of Virginia has adopted the rule that "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" Id. at 205 (quoting Foreign Mission Bd. v. Wade, 242 Va. 234, 241 (1991)). Accordingly, a cause of action in fraud will generally not lie when "each particular misrepresentation by [the defendant] related to a duty or an obligation that was specifically required by the . . . [c]ontract." Id. at 205-06 (quoting Richmond Metro. Auth. v.

8

McDevitt St. Bovis, Inc., 256 Va. 553, 559 (1998)) (omission and second alternation in original).

In addition to the requirement that a fraud claim be predicated on a duty arising outside of the contract, a fraud claim "must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Abi-Najm v. Concord Condo., LLC, 280 Va. 350, 362 (2010) (quoting Lloyd v. Smith, 150 Va. 132, 145 (1928)). Otherwise, "every breach of contract could be made the basis of an action in tort for fraud." Id. (quoting Lloyd, 150 Va. at 145). Although the general rule is that actionable fraud must be predicated on factual misstatements, "fraud may sometimes be predicated on promises which are made with a present intention not to perform them"; that is, the "false representation of an existing intention to perform . . . is the misrepresentation of a fact." Id. at 362-63 (quoting Boykin v. Hermitage Realty, 234 Va. 26, 29 (1987) (omission in original) (emphasis added).

Further clarifying the requirement that an actionable fraud claim be predicated on misstatements regarding "an existing fact," Virginia law provides:

> The mere expression of an opinion, however strong and positive the language may be, is no fraud. Such statements are not fraudulent in law, because . . . they do not ordinarily deceive or mislead. Statements which are vague and indefinite in their nature and

terms, or are merely loose, conjectural or
exaggerated, go for nothing, though they may not be
true, for a man is not justified in placing reliance
upon them.

Mortarino v. Consultant Eng'g Servs., Inc., 251 Va. 289, 293,
(1996) (emphasis added) (quoting Saxby v. Southern Land Co., 109
Va. 196, 198 (1909)). Accordingly, "commendatory statements,
trade talk, or puffing, do not constitute fraud because
statements of this nature are generally regarded as mere
expressions of opinion." Glaser v. Enzo Biochem, Inc., 126 F.
App'x 593, 600 (4th Cir. 2005) (quoting Lambert v. Downtown
Garage, Inc., 262 Va. 707, 713 (2001)). Because a fraud claim
requires a misstatement of fact, such a claim "cannot rest on a
misstatement of the legal effect of a contract," Wells Fargo
Bank, Nat. Ass'n v. Smith, No. 3:10cv411, 2010 WL 4622176, at *3
(E.D. Va. Nov. 5, 2010), or a misstatement regarding "what the
law will or will not permit to be done," Hicks v. Wynn, 137 Va.
186, 196 (1923) (citation omitted).

Notwithstanding the above, the Virginia courts have not
adopted "a bright line test to ascertain whether false
representations constitute matters of opinion or statements of
fact." Mortarino, 251 Va. at 293. "Rather, each case must in a
large measure be adjudged upon its own facts, taking into
consideration the nature of the representation and the meaning
of the language used as applied to the subject matter and as

10

interpreted by the surrounding circumstances." Id. (internal quotation marks and citation omitted).

While no "bright-line" test exists for separating fact from opinion, Tate v. Colony House Builders, Inc., 257 Va. 78 (1999) is instructive on this point. Addressing statements about a newly constructed house, Tate held that statements that the house was "free from structural defects" and was "constructed in a workmanlike manner" were statements of fact, noting that "whether the house was actually in the condition represented can be determined factually." Id. at 83-84. In contrast, the "alleged representation that the plaintiffs 'would enjoy quiet possession in the sense that apart from minor corrective work, no significant work would be required by way of restoration, rebuilding, or extensive repair'" were "representations predicated upon future events or promises" and thus could not support a claim for fraud. Id. at 84. Similarly, statements that the house was "'competently designed commensurate with the consideration of $345,000.00' and 'the design and construction [of the dwelling were] of the highest quality' are more in the nature of puffing or opinion and cannot form the basis of an action for constructive fraud." Id. (alteration in original).

Turning to the actual elements of a fraud claim under Virginia law, a Plaintiff must ultimately prove that the allegedly false representation relates to a "material fact,"

that it was made "intentionally and knowingly" and "with an
intent to misled," and that it was both relied on and caused
"damage to the party misled." Evaluation Research Corp. v.
Alequin, 247 Va. 143, 148 (1994). Moreover, a plaintiff must
prove fraud by clear and convincing evidence, to include proof
not only that "one has represented as true what is really
false," but that such representation was made "in such a way as
to induce a reasonable person to believe it, with the intent
that the person will act upon this representation." Id.
(citation omitted). "The touchstone of reasonableness is
prudent investigation," and "a plaintiff cannot claim that its
reliance was reasonable and justified when it makes a partial
inquiry, with full opportunity of complete investigation, and
elects to act upon the knowledge obtained from the partial
inquiry." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d
614, 629 (4th Cir. 1999) (citing Harris v. Dunham, 203 Va. 760,
768 (1962)).

Here, Plaintiffs' opposition to summary judgment relies on
three categories of fraudulent statements that Plaintiffs assert
induced Simon/Orbit to execute the OA: (1) statements asserting
that FedEx would be Orbit's "business partner"; (2) statements
asserting that Orbit would be an "independent contractor"; and
(3) statements regarding whether Plaintiffs would be required to

plan Orbit's delivery routes using FedEx's Vehicle Route Planning ("VRP") computer software.

The Court's analysis of these claims is necessarily predicated on a review of the record evidence through a "clear and convincing" lens as a juror would only be permitted to award to Plaintiffs damages in fraud if such elevated burden was satisfied. Such elevated burden requires proof "as will establish in the trier of fact a firm belief or conviction" that a knowingly false statement was made, with the intention to mislead, for the purpose of inducing Plaintiffs to execute the OA. Thompson v. Bacon, 245 Va. 107, 111 (1993) (emphasis added) (citation omitted). Because such proof is lacking in this case, summary judgment in Defendant's favor is warranted.[2]

### 1. "Business Partners"

Plaintiffs assert that, prior to executing the OA, FedEx made false statements to Simon indicating that FedEx would be his "business partner." It is somewhat unclear from Plaintiffs' summary judgment brief, ECF No. 45, at 19-20, as well as the evidence cited by the parties, see, e.g., Simon Tr. 56-57, ECF No. 39-1, how Simon purportedly interpreted such phrase at the

---

[2] The Court's conclusion on this issue is not based on weighing the evidence or making credibility determinations. Rather, the Court concludes that Plaintiffs' opposition to summary judgment fails to highlight evidence demonstrating a material factual dispute; stated differently, the evidentiary record cited by Plaintiffs, even when construed in their favor, is insufficient to support a reasonable juror's conclusion that Plaintiffs were fraudulently induced to sign the OA.

time it was made. Arguably, Plaintiffs advance two different theories: (1) that FedEx falsely promised that it had a "stake" or common "symbiotic" interest with Orbit such that FedEx would treat Orbit as an "equal"; or (2) that FedEx falsely promised that it would provide Orbit with business "support" of some kind in order to assist Orbit in satisfying Orbit's contractual duties.[3]

### a. Shared Financial Incentives

To the extent that Plaintiffs contend that FedEx's promises to be a "business partner" were interpreted by Simon/Orbit as asserting that FedEx had a business incentive for Orbit to succeed, Plaintiffs lack evidence sufficient to prove that such statements were false when made. To the contrary, Plaintiffs' own summary judgment brief affirmatively argues (and highlights evidence) in support of the accuracy of such statements. ECF No. 45, at 19-20.[4] Accordingly, in light of the record evidence supporting Plaintiffs' common-sense contention that FedEx had a

---

[3] While Defendant's filings reference a third possible interpretation, that FedEx falsely promised it would take a 50% ownership interest in Orbit, Mr. Simon admittedly did not interpret the statements at issue in such way. Simon Tr. 57. Additionally, even if Mr. Simon had a subjective belief that FedEx was promising to take an ownership interest in Orbit, such belief would not be reasonable in light of the terms of the OA and the lack of any detailed discussions on such topic. See Evaluation Research Corp., 247 Va. at 148 (indicating that fraud claim requires proof that a "reasonable person" would have relied on the representation).

[4] Although several of Plaintiffs' evidentiary citations in support of their claim that FedEx had "a stake" in Orbit appear to offer limited direct support for the proposition they follow, such citations as a whole, along with the terms of the OA, are sufficient to support Plaintiffs' contention that FedEx had a "stake" or mutual interest in Orbit's success.

14

financial interest in Orbit's success, Plaintiffs have failed to point to evidence that could support a reasonable juror in concluding, by clear and convincing evidence, that FedEx made a knowingly false statement, with intent to deceive, that it did in fact deceive Plaintiffs, or that damage resulted. Cf. ECF No. 45, at 20 (reflecting Plaintiffs' characterization of the relationship between FedEx and Simon as "clearly interdependent and could even be characterized as symbiotic").

To the extent that Plaintiffs contend that FedEx's promises to be a "business partner" was a promise that FedEx and Orbit would be 50/50 partners on equal footing, such claim fails for several reasons. First, such a claim depends greatly on the subjective interpretation of Mr. Simon in order to transform the broad language "business partner" into a promise to be 50-50 equals. Thus, "taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances," Mortarino, 251 Va. at 293, the broad statement that FedEx and Orbit would operate as "business partners" is properly categorized as "puffing or opinion," and, as a matter of Virginia law, it "cannot form the basis of an action for . . . fraud," Tate, 257 Va. at 84; see Devine v. Pulte Home Corp., No. 1:15cv1361, 2015 WL 8055858, at *4 (E.D. Va. Dec. 4, 2015) (noting that, pursuant to Virginia law, "when a statement

involves absolutes or objectively provable (or falsifiable) claims, courts have held the statement to be a representation of fact," whereas "when a statement has involved only <u>subjective value judgments</u>, the statement has generally been held to be an opinion or puffery") (citations omitted); <u>see also</u> <u>Lambert</u>, 262 Va. at 713 (noting that even when considered "in the light most favorable" to the plaintiff, the defendant's statement "that the vehicle was in 'excellent' condition cannot be viewed as anything more than an opinion").[5]

Second, such assertions could not have been reasonably relied upon by Plaintiffs based on the vague nature of the statements, the surrounding circumstances of the parties' business deal, and the express terms of the OA.  Importantly, as argued by <u>both parties</u>, the terms of the OA reveal that FedEx retained oversight over Orbit in many different ways, including oversight regarding the qualifications of Orbit's drivers, the ability to perform customer service inspections, oversight regarding the vehicles used by Orbit to perform deliveries, and authority to review and pass judgment on Orbit's proposed transfer of its PSAs.  Plaintiffs' claim, therefore, alternatively fails in light of the "well-settled rule that a party to a contract cannot reasonably rely on oral statements

---

[5] Plaintiffs' interpretation of the "business partner" statements as an assertion that FedEx had a "stake" in Orbit's success alternatively fail for the same reasons, that is, even if such statements were false when made, they constitute subjective value judgments and/or puffery.

that are contradicted by the plain terms of the final agreement." Fransmart, LLC v. Freshii Dev., LLC, 768 F. Supp. 2d 851, 866 (E.D. Va. 2011) (applying Virginia law); cf. Scheduled Airlines Traffic Offices, Inc. v. Objective Inc., 180 F.3d 583, 590 (4th Cir. 1999) (applying Virginia law and concluding that even if the movant had orally promised to share certain revenue streams equally with the non-movant, such promise was "superseded by the written contract that both parties signed," and thus, could not provide a basis for a reasonable jury to conclude that fraud had occurred).

Additionally, as highlighted by Defendant, the record evidence indicates that Mr. Simon, while working as an employee for a FedEx contractor, conducted a partial investigation into the relationship between FedEx and its contractors prior to signing the OA. Def.'s SUF ¶¶ 2, 7-9; Pls.' Resp. to Def.'s SUF ¶¶ 2, 7-9. Simon's failure to fully investigate the business relationship included, as discussed in greater detail below in footnote six, the failure to read the terms of the OA prior to signing it. See Hicks, 137 Va. at 195-96 ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.") (citation omitted). Plaintiffs therefore fail to

17

present evidence on which a juror could conclude that Mr. Simon reasonably interpreted the broad "business partner" statements as a firm commitment to treat Orbit, a company that had only recently incorporated and was going to service a single FedEx Zip Code, as a "50/50" equal. See Hitachi Credit, 166 F.3d at 629 (explaining that reliance is not "reasonable and justified" when a party has the opportunity to perform a more complete investigation but elects to act upon knowledge obtained through partial inquiry).

Third, even if the evidence were sufficient to permit a reasonable juror to conclude, under the clear and convincing standard, that an actionable false statement of fact was made, and that it was reasonable for Plaintiffs to rely on such statement, Plaintiffs fail to advance any evidence demonstrating that FedEx had any intent to mislead Simon when it promised to be his "business partner." Evaluation Research Corp., 247 Va. at 148. Plaintiffs offer no direct evidence demonstrating that, as of April 2012, FedEx did not intend to treat Simon and his business fairly in an effort to promote their mutual self-interests. Similarly, Plaintiffs fail to offer any circumstantial evidence of an intent to mislead at that time, such as evidence suggesting any animus (or reason for animus) between Simon and the relevant FedEx actors, including FedEx manager Cassandre Fann ("Fann"). Similarly, the record evidence

18

cited by Plaintiffs does not include direct or circumstantial evidence sufficient to demonstrate that FedEx or Fann misled Simon for the purpose of inducing him to sign the OA. In fact, Plaintiffs fail to present evidence or argument sufficient to even suggest a motivation to so induce Simon (as would exist if Simon paid an up-front fee to FedEx for the right to service a FedEx PSA).[6] To the contrary, the evidence before the Court,

---

[6] Plaintiffs' brief appears to assert that there is evidence of fraudulent intent based on the fact that, during the period that Simon was considering becoming a contractor, FedEx "knowingly and intentionally" provided him with an outdated "sample" OA and that it later "rushed him through the signing process." ECF No. 45, at 20. Plaintiffs' cited evidence, however, fails to support (even by inference) the fact that an outdated OA was provided to Mr. Simon for the purpose of deceiving Simon, that the "sample" OA was materially different from the actual OA he later signed, or that FedEx "rushed" Simon through signing the OA. Notably, Plaintiffs' brief improperly relies on citations to the second amended complaint rather than citations to affidavits, depositions, or other exhibits. Id. Furthermore, even assuming that Mr. Simon did not see the updated OA until the day it was executed, Defendant directly cites to Simon's sworn deposition testimony indicating that, on the day he signed the OA: (1) Simon did not ask for time to review the OA prior to signing it; (2) Simon apparently accepted FedEx's representation that Ms. Fann was unavailable at that time and that she would review the OA with Simon after he signed it; and (3) the reason Mr. Simon did not wait to sign the OA until after he could speak with Ms. Fann was because he had "waited almost four months to receive this contract to start [his] business" and he "was ready to start." Simon Tr. 48-49. While Plaintiffs' response in opposition to summary judgment labels Defendant's assertion of facts on this issue as "disputed," Plaintiffs: (1) counter only with the statement that Simon "signed the [OA] pages as they came off of the printer" and "was not afforded the opportunity to review the actual OA until the day of signing"; and (2) fail to cite any evidence in support of such limited counter-facts, instead again improperly citing to the second amended complaint. ECF No. 45, at 12. Accordingly, such limited unsupported factual contentions are facially insufficient to create a genuine dispute regarding whether Mr. Simon voluntarily signed the agreement after electing not to read the provisions he was agreeing to. While Plaintiffs' argument in their brief may dispute Defendant's facts, their citation to record evidence is fundamentally lacking, and no reasonable juror could conclude that the cited evidence demonstrates by a clear and convincing showing that FedEx acted with fraudulent intent. The Court notes that its review of the evidence cited by the parties does not amount to "weighing" such evidence, but rather, is the review required to determine whether the

19

including portions of Simon's deposition cited by both parties, demonstrates both that <u>Simon pursued FedEx</u> about becoming a FedEx contractor and that Simon ultimately purchased his PSA from an existing FedEx contractor—not from FedEx. Simon Tr. 23-24;[7] Def.'s SUF ¶ 13. Accordingly, even drawing all reasonable inferences in Plaintiffs' favor, there is plainly insufficient evidence for a juror to conclude, under the "clear and convincing" standard, that the broadly stated promise to act as a "business partner" was a false statement of fact when made (or a false promise made with the present intent not to perform it), made "in such a way as to induce a reasonable person to believe it," and/or that it was made <u>for the purpose</u> of inducing Orbit to enter into the OA. <u>Evaluation Research Corp.</u>, 247 Va. at 148.[8]

### b. Business Support

To the extent that Plaintiffs assert that use of the phrase "business partner" promised some degree of <u>specific support</u> by

---

cited evidence is sufficient to create a "genuine" dispute as to a "material" fact.

[7] Mr. Simon testified that Ms. Fann responded to his initial expression of interest in becoming a FedEx contractor by stating that she receives similar inquiries on a regular basis but rarely does anyone follow through. Simon Tr. 24. But after Mr. Simon clarified that he was "pretty interested," Ms. Fann explained the process to him, including the fact that he would need to "find[] a contractor who was willing to sell their routes." <u>Id.</u>

[8] Additionally, even if the cited evidence were sufficient to satisfy each of the above elements, as discussed in greater detail below, Plaintiffs fail to point to evidence of damages sufficient to support a jury verdict.

FedEx above and beyond FedEx's contractual obligations, such a promise cannot satisfy the requirements for a fraud claim for several reasons.   First, the statements at issue are "unfulfilled promises or statements as to future events" rather than a false representation of a present fact, and thus, they are generally not actionable.  <u>Abi-Najm</u>, 280 Va. at 362.  To the extent that the statements at issue could be characterized as a false promise made with a present intention not to perform, as discussed above, there is <u>no evidence in the record</u> suggesting that Defendant did not intend to work together with Orbit to "support" their mutual interest in effective package delivery <u>at the time the OA was signed</u>.   While Plaintiffs' briefing, ECF No. 45, at 3, as well as a citation to Simon's deposition advanced by Defendant, Simon Tr. 200, suggest that the parties' relationship broke down after November 2012 and, according to Simon, FedEx "got rid of him" because he "was a problem to the FedEx corporation," Plaintiffs present no evidence of any animus, bad relations, intent to "get rid" of Simon or Orbit, or plan not to provide Plaintiffs' with general "support" in April of 2012 when the OA was signed.   Moreover, not only is there the lack of evidence suggesting the existence of any animus or intent not to "support" Orbit in April of 2012, but there is contrary evidence suggesting that FedEx and Orbit initially had a good business relationship, to include, <u>as highlighted by</u>

Plaintiffs, the fact that Orbit won a FedEx award for being the "subcontractor of the month" for June of 2012. ECF No. 58-3. Additionally, in August of 2012, after several months of operation as a FedEx contractor, and with first-hand experience of the degree of "support" provided by FedEx, Orbit made the affirmative decision to expand its business relationship with FedEx through the acquisition of a second PSA. Thus, on the evidence before the Court, no reasonable juror could conclude, under a clear and convincing standard, that FedEx made the promise that it would provide (unspecified) "support" to Orbit with the present intention not to fulfill such promise.[9]

Second, absent any clarity regarding what type of support was to be provided by FedEx, a promise to be a "business partner" is "vague and indefinite in [it's] nature and terms," and thus, Simon was not justified in relying on such promise. Mortarino, 251 Va. at 293. Stated differently, "it is difficult to see how [Plaintiffs] reasonably could have relied upon [FedEx's] representations regarding [promises of support], or how [Orbit/Simon] was induced by these representations to enter the Agreement, when the substance of the [alleged support], on

---

[9] The fact that Plaintiffs have maintained throughout this litigation that FedEx improperly failed to renew Orbit's OA after the expiration of its one-year term and that Plaintiffs should have had the business opportunity to continue to service their PSAs arguably further undercuts any inference that Plaintiffs were fraudulently induced into signing the OA.

this record, was <u>never described or discussed</u> between the parties." <u>Fransmart</u>, 768 F. Supp. 2d at 866 (emphasis added).

Moreover, even if the vague promise of "support" was sufficiently descriptive to justify reliance, the alleged unfulfilled promise is not actionable if it conflicts with the express terms of the OA describing <u>Orbit's contractual obligations</u> (including Orbit's obligations to staff its company, maintain its vehicles, and to deliver packages). <u>Scheduled Airlines Traffic Offices, Inc.</u>, 180 F.3d at 590. While Plaintiffs' arguments on this point appear to focus on the contention that FedEx's "partner" promise, coupled with Mr. Simon's past experience with FedEx, resulted in an inferred promise that FedEx would supply qualified drivers to Orbit in order to supplement Orbit's workforce during the busy holiday period, such alleged promise conflicts with Orbit's <u>contractual obligation</u> to provide the vehicles <u>and drivers</u> necessary to service Orbit's PSAs. Accordingly, Plaintiffs' interpretation of the partnership statements as a promise to provide supplemental drivers fails in light of the "well-settled rule that a party to a contract cannot reasonably rely on oral statements that are contradicted by the plain terms of the final agreement." <u>Fransmart</u>, 768 F. Supp. 2d at 866.[10]

---

[10] Additionally, Plaintiffs cannot recover in fraud merely by proving that a promise was broken, they must instead prove that FedEx intended to break such promise at the time it was made. As discussed above, the record is

For the above stated reasons, summary judgment is entered in favor of Defendant with respect to Plaintiffs' claim based on FedEx's promise to act as Plaintiffs' "business partner."

## 2. "Independent Contractor"

Plaintiffs separately assert that FedEx fraudulently promised Plaintiffs, both orally and through the terms of the OA, that Orbit would be treated as an "independent contractor," but that FedEx then exercised such a degree of control over Plaintiffs that Plaintiffs actually qualify under the law as FedEx's "employees." Such claim fails for many of the same reasons as the claim predicated on the "business partner" statements.

First, Plaintiffs fail to advance evidence that is capable of establishing that FedEx made a false representation of a present fact. Even assuming that Plaintiffs are correct that, based on the terms of the OA and FedEx's treatment of Orbit, Virginia law would categorize Plaintiffs as FedEx "employees" rather than independent contractors,[11] at best Plaintiffs have

---

devoid of evidence of fraudulent intent in April of 2012. Moreover, Plaintiffs have failed to prove damages stemming from the alleged fraud.
[11] Such assumption is made without deciding the point, as FedEx's alleged involvement in prescreening potential employees and/or enforcing contractual or DOT mandated requirements regarding the vehicles used by Orbit may be better classified as issues associated with qualifications to perform the work rather than oversight dictating the manner or means in which Orbit actually provided delivery services on a day-to-day basis. Cf. Ogunde v. Prison Health Servs., Inc., 274 Va. 55, 61 (2007) (explaining that the initial "pre-screening" of the contractor's medical employees prior to such individuals being permitted to work in a prison setting "relate to issues of security attaching to penal institutions, not

alleged that FedEx made <u>false legal representations</u>. Importantly, a fraud claim "cannot rest on a misstatement of the legal effect of a contract." <u>Wells Fargo</u>, 2010 WL 4622176, at *3; <u>see</u> <u>Hicks</u>, 137 Va. at 196 (explaining that the "truth or falsehood" of a legal representation "can be decided by ordinary vigilance and attention," and if a party relies on such legal statements "he does so . . . [at] his folly") (citation omitted).

Second, Plaintiffs fail to demonstrate reasonable reliance on the promise that Orbit would be an "independent contractor" to the extent that the FedEx oversight of which Plaintiffs complain <u>is spelled out in the OA</u>, to include oversight over delivery trucks, the use and placement of FedEx logos, the fact that FedEx could perform customer service inspections, as well as FedEx's retention of the ability to pass judgment on proposed PSA transfers. Stated differently, to the extent there is an internal "conflict" in the OA between the terms stating that Orbit was "an independent contractor" and the terms revealing that Orbit lacked the degree of discretion that Plaintiffs assert is typically afforded an independent contractor, Virginia law does not permit Plaintiffs to seek redress through a fraud-

---

to the provision of medical services," and that because the "rendering of medical services to inmates" remained under the control of the contractor, the contractor and its doctors were "independent contractors" notwithstanding the Department of Corrections involvement in performing background investigations or other pre-screening activities).

based tort claim as a result of Plaintiffs' own failure: (1) to appreciate the restrictive nature of <u>express contract terms</u>; and/or (2) to perform an adequate investigation into the business relationship prior to signing the OA.[12]   Cf. <u>Augusta Mut. Ins.</u>, 274 Va. at 204 (discussing the need to "avoid turning every breach of contract into a tort," and the requirement that the duty breached "be a common law duty, not one existing between the parties <u>solely by virtue of the contract</u>") (emphasis added) (citation omitted).

Third, for the same reasons stated in the preceding section, Plaintiffs fail to highlight evidence that would permit a reasonable juror to conclude that FedEx made false statements to Mr. Simon <u>for the purpose of</u> inducing him to execute the OA.

Fourth, Plaintiffs fail to point to evidence capable of demonstrating that they suffered damages as a result of FedEx's broken promise to treat Orbit as an "independent contractor." Plaintiffs' primary contention in opposition to summary judgment on this point appears to be that it was not until after Simon executed the OA that he discovered FedEx's degree of involvement in pre-screening individuals that Orbit identified as potential

---

[12]   As previously discussed, Plaintiffs fail to point to evidence indicating that FedEx <u>intentionally</u> provided Simon with an outdated OA and/or that FedEx "rushed" him through the signing process. Moreover, the fact that Plaintiffs seek to rely on FedEx's alleged (but unsupported by evidence) attempt to hide the contents of the OA from Simon further demonstrates that Plaintiffs take issue with the authority FedEx is granted by the <u>contract terms themselves</u>, not by any independent oral promises.

Orbit drivers. ECF No. 45, at 19-20. Although Plaintiffs assert that FedEx's excessive involvement in Orbit's hiring of its drivers hurt Orbit's business, they fail to present specific evidence supporting such conclusory claim.

A review of the evidence that is cited by Plaintiffs on this issue reveals generalized evidence indicating that local FedEx managers acted beyond their contractual authority, to include a statement in an affidavit from a former FedEx employee indicating that if FedEx had negative feelings toward a contractor it would disqualify such contractor's prospective drivers "whether the applicant was qualified or not," and would do so "for whatever reason, or no reason at all." ECF No. 53-3. Although the Court accepts such sworn statement as true at this stage of the proceedings, such generalized evidence falls far short of that necessary to support a claim for damages because it is facially insufficient to establish that FedEx treated Orbit in such manner. As this Court indicated in its earlier Memorandum Opinion granting in part FedEx's motion to dismiss, a plausible claim for relief requires more than "vague references to unfair dealing." ECF No. 20, at 15. For example, as explained by the Court in a footnote, a plausible breach of contract claim could be advanced through alleging facts indicating: (1) that Orbit sought to hire a new driver that was qualified to drive under the terms of the OA; yet (2) FedEx

27

improperly blocked Orbit's hire of such driver even though he or she was qualified. After months of discovery and at this late stage in the case, Plaintiffs' summary judgment brief fails to cite to any evidence capable of demonstrating that Orbit sought to hire a qualified driver yet FedEx refused to approve such driver, or otherwise mistreated Orbit with respect to the screening of such driver. See Klaiber v. Freemason Assocs., Inc., 266 Va. 478, 485 (2003) ("[A]n allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage." (quoting Community Bank v. Wright, 221 Va. 172, 175 (1980))).[13] Plaintiffs' cited evidence, and conclusory statement in their brief that they suffered "compensatory damages, consequential damages, and expectation damages," ECF No 45, at 21, falls far short of that necessary to survive summary judgment.

In sum, Plaintiffs have failed to demonstrate that FedEx: (1) knowingly made a false statement of fact or false promise with the present intention not to perform regarding Orbit's status as a contractor; (2) that the challenged statements were

_____

[13] Plaintiffs similarly advance generalized evidence indicating that FedEx exercised undue control over Orbit by telling contractors what time to arrive at the FedEx warehouse in the morning and by mandating that contractors' drivers remain at the warehouse until all packages were ready. ECF No. 53-3. Accepting such generalized evidence as true, and further assuming that such generalized practice was in place when Orbit was a contractor, Plaintiffs still fail to advance any evidence suggesting the frequency with which such conduct impacted Orbit and/or any evidence seeking to quantify the harm allegedly suffered by Orbit. Such failures of proof render both liability and damages speculative, particularly when such claim is advanced on a tort-based fraud theory.

made with the intent to mislead Plaintiffs in order to induce them to sign the OA; (3) that Plaintiffs acted reasonably in relying on such false statements; and/or (4) that Plaintiffs suffered damages associated with FedEx exerting improper oversight or control over Orbit.

### 3. Misstatements regarding VRP

Plaintiffs' third fraudulent inducement theory is grounded in allegations that FedEx made false statements regarding: (1) Orbit's obligation to plan its delivery routes through the use of FedEx's "VRP" route planning system/software; and/or (2) the fact that there was not a FedEx training course on how to use VRP. Plaintiffs further argue that FedEx failed to disclose the fact that VRP training was unavailable because, pursuant to a FedEx corporate policy (that was not being followed locally), contractors were not supposed to be using VRP. ECF No. 45, at 6.

Such associated claims cannot support a viable action in fraud as the undisputed evidence demonstrates that FedEx's express statements to Plaintiffs before the execution of the OA were not false statements, because at the time: (1) contractors servicing FedEx PSAs in this geographical area were in fact required by local FedEx management to use VRP; and (2) there was not a FedEx training course available to contractors to educate them on the VRP system. These facts are established through

29

Simon's own sworn deposition testimony (cited by both parties) indicating that, before the OA was executed, Fann informed Simon of the lack of available VRP training and his need to informally learn the VRP system. Relying on such statements, Simon attended informal training sessions provided by other FedEx contractors prior to executing the OA, and both before and after Simon signed the OA he was told the same thing (by both FedEx and FedEx contractors)—that FedEx would not provide VRP training. ECF No. 45, at 6; Simon Tr. 58. After the OA was signed, as promised: (1) FedEx did not train Simon on VRP, and (2) for more than six months, Plaintiffs used VRP to plan their delivery routes.

Notwithstanding Plaintiffs' arguments to the contrary, the fact that FedEx made statements to Plaintiffs that there was no training course available, rather than more precisely specifying that while there was a training course offered in Pittsburgh, Pennsylvania for FedEx management, there was not a training course available for contractors, is a distinction without a difference. Stated differently, FedEx's failure to provide such clarity was not a material misstatement of fact even if it was a misstatement, because Plaintiffs were accurately informed of local practice regarding VRP training before Simon signed the OA, and knowing that Orbit was expected to learn and utilize VRP without a formal training course, Simon still decided to sign

30

the OA. Simon Tr. 37. As the evidence before the Court does not demonstrate a knowing and intentional misstatement, about a material fact, made for the purpose of inducing Simon to execute the OA, there is plainly insufficient evidence for a juror to conclude, by clear and convincing proof, that Simon was fraudulently induced to sign the OA based on statements regarding VRP.[14]

In addition to the above, Plaintiffs fail to present facts capable of demonstrating that they suffered damages as a result of the VRP statements. Plaintiffs appear to assert that they suffered unspecified damages based on uncompensated time, or unnecessary delays, associated with the time Plaintiffs spent using the VRP system. However, Plaintiffs do not highlight any evidence suggesting that FedEx had a contractual obligation to plan Orbit's delivery routes. To the contrary, as previously discussed, the OA expressly states that FedEx did not have authority to dictate the route that the contractor would follow when delivering packages. OA § 1.14. Accordingly, Plaintiffs' contention that they suffered damages because it "was the responsibility of FedEx employees" to plan Orbit's routes, ECF No. 45, at 23, finds no basis in fact beyond the evidence demonstrating that FedEx provided such service, pursuant to corporate policy, at other FedEx locations.

---

[14] The Court adopts its prior analysis regarding the Plaintiffs' failure to highlight evidence that could demonstrate the intent to mislead.

As a final point on this issue, it is unclear from Plaintiffs' arguments in opposition to summary judgment whether Plaintiffs also seek relief based on a theory of fraud by omission (i.e., FedEx's failure to disclose: (1) that FedEx had a VRP training course available to FedEx "management" at "FedEx University" in Pittsburgh, ECF No. 53-3; or (2) that FedEx had a corporate policy against contractors using VRP). Plaintiffs, however, do not expressly advance a claim for relief based on omissions, appearing instead to reference such omissions in an effort to demonstrate that FedEx had the intent to mislead/deceive Plaintiffs. As no express fraud by omission claim is made, and no case law on this theory is cited, the Court finds that Plaintiffs cannot recover on such unpursued theory. See LBCMT 2007-C3 W. Broad St., LLC v. WSG Dev. Co., No. 3:12cv455, 2013 WL 1897128, at *5 n.5 (E.D. Va. May 6, 2013) (declining to address matters raised in the initial pleadings but not pursued on summary judgment, explaining that "[t]he Court will not manufacture arguments supporting or opposing the [unraised] affirmative defenses").

Alternatively, if such claim were before the Court, it would require "evidence of a knowing and a deliberate decision not to disclose a material fact." Lambert, 262 Va. at 714 (citation omitted). While it is assumed to be true (based on Plaintiffs' evidence) both that there was a VRP training course

32

available to FedEx management and that contractors in <u>other</u>
<u>FedEx stations</u> were not allowed access to the VRP system based
on a FedEx "corporate policy," Plaintiffs fail to present
evidence suggesting that such matters of internal FedEx
governance were <u>material</u> to Simon's decision to sign the OA.[15]
Moreover, fatal to any claim of fraud by omission is Plaintiffs'
failure to provide any evidence of a "knowing and deliberate
decision" not to disclose such information. See <u>id.</u> at 714
(affirming the trial court's judgment striking the plaintiff's
trial evidence on his fraud claims because the evidence was
insufficient to "support the inference" that Defendant made the
deliberate decision not to disclose a material fact).
Plaintiffs not only fail to present such evidence, but
<u>Plaintiffs themselves cite</u> to evidence in the record indicating
that Ms. Fann had never questioned the local practice until Mr.
Simon continued to question the lack of training and so she
"kind of ran it up the chain" to find out "if that's something
that [they] should be doing," and that she then "immediately put

---

[15] Stated differently, Simon fails to point to evidence indicating that he
acted upon the assumption that such facts did not exist, that is, that he
signed the OA on the false assumption that <u>FedEx managers</u> could not be
trained on VRP (when they really could) and/or on the false assumption
that contractors in other localities were not required/allowed to use VRP
based on a corporate policy. Moreover, Plaintiffs fail to point to
evidence capable of demonstrating that Fann, other local FedEx managers,
or FedEx itself knew at the time the OA was signed that Simon was
operating under such misconceptions. See <u>Allen Realty Corp. v. Holbert</u>,
227 Va. 441, 450 (1984) ("Concealment of a material fact by one <u>who knows</u>
<u>that</u> the other party is acting upon the assumption that the fact does not
exist constitutes actionable fraud.") (emphasis added).

a stop to" contractors having access to the VRP system. Fann
Tr. 159:1-21, at ECF No. 52-1. Accordingly, Plaintiffs fail to
present evidence sufficient to support a reasonable juror in
concluding, by clear and convincing evidence, that Defendant
affirmatively, or by omission,[16] made material misstatements or
omissions with the intent to mislead Simon, for the purpose of
inducing him to sign the OA, and/or that Plaintiffs suffered
damages as a result.

### 4. Summary

For all of the above reasons, the record evidence cited by
the parties demonstrates that no reasonable juror could
conclude, by clear and convincing evidence, that FedEx made a
false representation (or omission) as to a "material fact,"
"with an intent to mislead," and/or that Plaintiffs reasonably
relied on such statements resulting in "damage to the party
misled." Evaluation Research Corp., 247 Va. at 148; cf. Cray

---

[16] Plaintiffs present evidence demonstrating that after Orbit's OA was not
renewed, local contractors were again allowed to use the VRP system for a
period of time, but that after Ms. Fann was transferred to a different
FedEx location, the local practice changed again. ECF No. 53-2; 53-4.
Such evidence, assumed to be true and construed in Plaintiffs' favor,
remains largely irrelevant as it at most suggests that local management
did not consistently apply internal FedEx corporate policies. While Mr.
Simon may not have known about such corporate policies when he signed the
OA, he chose to sign the OA with full knowledge of the local VRP practice
and the promised local practice was then followed for many months.
Surely, Orbit (and all other local contractors) may have worked harder for
the same profit based on such local practice (assuming, in Plaintiffs'
favor, that access to VRP created extra work for contractors). However,
in the absence of evidence demonstrating that FedEx had any obligation,
contractual or otherwise, to plan its contractors' delivery routes,
Defendant's non-disclosure of the fact that a "benefit" that existed
elsewhere did not exist at the local FedEx warehouse is legally
insufficient, on the current record, to support a fraud claim.

Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 394
(4th Cir. 1994) (affirming the grant of summary judgment based
on the non-movant's failure to submit factual support for each
element of its fraud claim, finding the "failure of proof
particularly unsatisfactory" in light of the extensive
discovery, including numerous depositions, that had been
completed in that case).    Summary judgment is therefore granted
in favor of Defendant as to Count One.

### B. Count Three – Breach of Contract

The parties agree that, pursuant to the express terms of
the OA, such contract is to be interpreted pursuant to
Pennsylvania law. "It is well-established that three elements
are necessary to plead a cause of action for breach of contract
[under Pennsylvania law]: (1) the existence of a contract,
including its essential terms, (2) a breach of the contract;
and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek &
Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d
1247, 1258 (Pa. 2016) (citation omitted).

Defendant asserts on summary judgment that Plaintiffs have
failed to allege facts sufficient to support a breach of
contract claim because: (1) Plaintiffs have failed to identify a
contractual duty contained in the OA that was breached by FedEx;
(2) FedEx has, in fact, not breached any contractual obligation;
(3) even if a breach occurred, Plaintiffs have failed to

35

demonstrate damages stemming from such breach; and (4) even if there was evidence of a breach and evidence of damages, Plaintiffs have failed to mitigate their damages. Plaintiffs respond in opposition to summary judgment as to some but not all of Defendant's arguments, arguing in support of two different breach theories, and listing what Plaintiffs contend are "disputed material facts" as to the two breach theories argued by Plaintiffs as well as one additional breach theory. ECF No. 45, at 7-9. Plaintiffs also point to evidence that they assert demonstrates damages suffered as a result of such breaches. Id. at 9. For the reasons stated below, the Court finds that Defendant has demonstrated an absence of disputed material facts on these matters and Plaintiffs have failed to point to evidence capable of rebutting such showing. Therefore, summary judgment in Defendant's favor is proper.

### 1. Department of Transportation ("DOT") regulations

Defendant argues on summary judgment that Plaintiffs cannot succeed on any breach of contract claim, including their claim that Defendant knowingly violated federal DOT regulations, absent a showing that FedEx had a contractual duty/obligation to perform in the claimed manner. ECF No. 39, at 24. Plaintiffs respond by noting their agreement that it is the terms of the OA that govern the conduct of the parties. ECF No. 45, at 24. However, the only contractual provision Plaintiffs rely on in

support of the instant claim is a provision in the OA indicating that the contractor (Orbit), must both ensure that its personnel comply with DOT limitations on delivery drivers' hours and report their hours to FedEx. Id.

While the Court, at the summary judgment stage, accepts as true Plaintiffs' version of disputed events and assumes that a FedEx manager instructed Orbit (and other contractors) to falsify their DOT records, Plaintiffs have failed to articulate how such action, even if illegal and improper, was a breach of the OA. Stated differently, although FedEx clearly has an independent legal obligation to comply with DOT regulations, Plaintiffs have failed to illustrate such a contractual duty/obligation that FedEx owed to Orbit/Simon. See Stein v. Magarity, 102 A.3d 1010, 1013-14 (Pa. Super. Ct. 2014) (explaining that a breach of contract claim "requires a plaintiff to establish (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages") (emphasis added) (citation omitted); cf. Filak v. George, 267 Va. 612, 619 (2004) ("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.") (emphasis added) (citations omitted); Young v. CitiMortgage, Inc., No. 5:12cv079, 2013 WL

37

3336750, at *11 (W.D. Va. July 2, 2013) (explaining that there was no "common-law duty of care" owed by the defendant to the plaintiff with respect to their mortgage relationship; rather, the defendant's "duties were defined solely by any enforceable promises it made"). Moreover, even if it is assumed that FedEx owed Plaintiffs an implied duty to accurately maintain driver logs or other records submitted by Plaintiffs (a claim not expressly made by Plaintiffs), after discovery, Plaintiffs fail to highlight evidence suggesting either: (1) that Plaintiffs followed FedEx's illegal command and altered DOT records regarding driver "on duty" time; or (2) that FedEx unlawfully altered Orbit's records when Orbit refused to do so.

Plaintiffs' claim separately fails because even if the Court assumes that Orbit's driver logs/records were modified (either by FedEx, or by Simon/Orbit at FedEx's direction), Plaintiffs fail to demonstrate that they suffered any damages as a result. There is no evidence before the Court that Simon/Orbit was the subject of any legal charges or DOT proceedings, no evidence that an Orbit driver was punished by FedEx for altering records, and no evidence that Simon or Orbit suffered any negative consequences of any kind as a result of the (assumed) fact that Orbit's DOT records were altered.

Thus, while Plaintiffs have unquestionably presented evidence indicating a "genuine" factual dispute as to whether a

FedEx manager behaved illegally, they fail to demonstrate that such dispute is "material" to the resolution of Plaintiffs' breach of contract claim because even assuming that such illegal conduct occurred, Plaintiffs do not articulate evidence on which a reasonable juror could find either that a breach occurred or that Plaintiffs suffered any damages stemming from such breach. While Plaintiffs are correct that a violation of DOT regulations "is no trivial matter," Plaintiffs cannot establish a right to legal recovery of money damages on a breach of contract theory based on evidence that FedEx breached a duty owed to a Government agency and/or the public.[17]

### 2. Breaches associated with "Independent Contractor" Status, FedEx Fees, and FedEx's Rejection of Orbit's Attempt to Transfer its PSAs

As indicated above, Defendant argues that, after discovery, Plaintiffs lack admissible evidence that would demonstrate an element on which they bear the burden—that is, that Defendant breached any provision of the OA. Specifically, with respect to Plaintiffs' allegations that FedEx breached the OA by exerting too much control over Orbit and treating Orbit and Simon as an "employee," Defendant asserts that Orbit was an independent

---

[17] Because the OA requires Orbit to comply with DOT regulations, a command by FedEx that Orbit alter its records (if followed) could theoretically support a claim that FedEx improperly induced Orbit to commit a breach. However, as discussed above, Plaintiffs do not point to evidence indicating that they did in fact illegally alter their records. Moreover, even assuming that Orbit followed such "command" and breached the OA, Plaintiffs not only fail to proceed on an inducement theory, but they fail to point to any evidence of negative consequences, i.e. damages, that resulted from an induced breach.

contractor because: (1) it controlled its workforce, to include
Orbit's responsibility to hire and train Orbit drivers, set
wages for and pay Orbit drivers, and fire Orbit drivers, as
evidenced by the terms of the OA and cited excerpts from Mr.
Simon's deposition, <u>see</u> Def.'s SUF ¶¶ 19-21, 26, 28, 30,[18] and
31-32;[19] ECF No. 39, at 25; and (2) it controlled the manner in
which Orbit performed its daily delivery operations and business
plan, to include determining the number of drivers it needed,
the number of delivery trucks it needed, and the decision to
expand its business into another Zip Code.  Def.'s SUF ¶¶ 21,
26, 29; ECF No. 39, at 25.

With respect to Plaintiffs' allegations that FedEx breached
the OA by <u>requiring</u> Orbit to purchase the FedEx "Business
Services Plan" ("BSP"), Defendant asserts that Plaintiffs <u>twice</u>
<u>elected</u> to purchase the FedEx BSP, first when the OA was signed
in April of 2012, and again several months later when Orbit
acquired its second PSA.  Def.'s SUF ¶¶ 15, 24.  Similarly, with
respect to Plaintiffs' broader allegations that FedEx breached

[18] Plaintiffs respond to Def.'s SUF ¶ 30 by clarifying that Orbit lacked
the "exclusive ability to hire its employees" because new hires were
subject to FedEx screening/approval.  Pls.' Resp. to Def.'s SUF ¶ 30.
While Plaintiffs cite no specific evidence in support of such response,
<u>id.</u> (citing only to "Simon Tr. Pt. 2"), the terms of OA Addendum 13 and
other <u>record evidence cited by the parties</u> are sufficient to support, for
the purposes of summary judgment, Plaintiffs' factual contention that
FedEx took an active role in processing and approving Orbit's potential
hires.

[19] Although Plaintiff offered "clarification" as to some of these facts,
the above cited facts, and those that immediately follow, are nearly all
identified as "undisputed" by Plaintiffs.  ECF No. 45.

the contract by taking improper deductions from payments FedEx owed to Orbit for delivering packages, Defendant asserts that Plaintiffs have no evidence supporting a claim for improper deductions because: (1) Orbit never challenged any of such deductions during the period of performance, id. ¶ 35; (2) Orbit agreed by contract that deductions would be conclusive and binding unless disputed within 30 days of assessment, OA ¶ 4.2; and (3) even at this late stage of the litigation, Orbit has not identified any specific deductions that were not authorized by the OA.  ECF No. 39, at 26-27.

Finally, with respect to Plaintiffs' allegations that, after Orbit's OA was slated for non-renewal, FedEx improperly refused to approve the transfer of Orbit's PSAs to Mr. Simon's family lawyer and friend (Mr. Taylor), Defendant asserts: (1) that FedEx had the express contractual right to approve or reject such proposed transfer; and (2) that Plaintiffs have not produced any evidence indicating that it was "unreasonable" for FedEx to withhold approval of such transfer.  OA Addendum 16 ¶ 17; ECF No. 39, at 27.

Plaintiffs' brief in opposition to summary judgment includes an argument section labeled "Breach of Contract Claim," ECF No. 45, at 23-26, however, the argument therein focuses almost exclusively on Plaintiffs' DOT claim.  After addressing such DOT claim in detail, Plaintiffs advance one paragraph of

41

argument in support of their contention that "Orbit did not receive due process during the non-renewal" of the OA and two paragraphs of argument in support of Plaintiffs' contention that they suffered damages and attempted to mitigate damages. Id. at 25-26. Importantly, there is no argument identifying any breach associated with Orbit's classification as an "independent contractor," nor is there any argument addressing the alleged requirement to purchase a BSP, the improper deductions, or FedEx's failure to approve Orbit's transfer of its PSAs to Mr. Taylor.

While there is no argument section as to any of these issues, an earlier section of Plaintiffs' brief does advance three categories of "disputed facts" with each supported by multiple sub-statements and evidentiary citations. First, as already addressed and rejected above, Plaintiffs advance factual contentions related to their DOT claim. Second, Plaintiffs assert that "Simon was not an independent contractor" and advance two facts in support. ECF No. 45, at 7. Third, Plaintiffs assert that the "Orbit Corp Contract should have been renewed" at the end of its initial one-year term and provide numerous factual claims in support. Id. at 8-9. Following the third category, Plaintiffs cite to evidence relevant to damages. Id. at 9. The Court addresses each of these matters below (with the exception of the DOT claim fully addressed above).

### a. "Simon was not an independent contractor"

As indicated immediately above, Plaintiffs' argument in opposition to summary judgment as to the breach of contract claim is limited to presenting Plaintiffs' DOT violation theory and "due process" theory. "[M]any courts within the Fourth Circuit, as well as other circuits, have held that a plaintiff's failure to respond to a summary judgment motion constitutes waiver or abandonment of a claim." Roberts v. Holder, No. 1:08cv1011, 2009 WL 691212, at *5 (E.D. Va. Mar. 13, 2009) (citation omitted); see Eady v. Veolia Transp. Servs., Inc., 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("The failure of a party to address an issue raised [on] summary judgment may be considered a waiver or abandonment of the relevant cause of action.") (citation omitted); Brand v. N. Carolina Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (labeling failure to respond as a concession) (citations omitted); see also Muhammad v. Giant Food Inc., 108 F. App'x 757, 763-64 (4th Cir. 2004) (noting that even though some evidence on the matter in dispute had been submitted by the plaintiffs in support of an earlier "class certification motion," the plaintiffs did not "specifically refer[]" to such evidence in opposition to summary judgment; and plaintiffs' "passing mention" to the same subject matter in opposition to summary judgment did not "sufficiently present[]" the issue to

43

the district court, rendering the issue forfeited on appeal);
Packer v. Trustees of Indiana Univ. Sch. of Med., 800 F.3d 843,
849 (7th Cir. 2015) ("It is a well-settled rule that a party
opposing a summary judgment motion must inform the trial judge
of the reasons, legal or factual, why summary judgment should
not be entered. If it does not do so, and loses the motion, it
cannot raise such reasons on appeal.") (citation omitted).
Accordingly, this Court views this claim, raised by Defendant in
its summary judgment filing, but not responded to in the
argument section of Plaintiffs' brief, as having been abandoned,
particularly because Plaintiffs are proceeding with counsel and
have affirmatively opposed summary judgment on other grounds—
suggesting that Plaintiffs have made the strategic decision not
to further pursue the abandoned claim.[20]

Alternatively, even if the Court views Plaintiffs' listing
of facts prior to its argument section as a proper opposition to
summary judgment on this issue, Plaintiffs fail to point to
sufficient evidence to survive summary judgment. Specifically,
in support of Plaintiffs' apparent assertion that FedEx breached
the OA because it treated Orbit/Mr. Simon as employees rather

---

[20] In fact, Plaintiffs' brief in opposition to summary judgment, filed by
counsel, expressly acknowledges that FedEx's position on summary judgment
includes the contention that Orbit has identified "five non-existent
contractual duties, . . . first of which was a duty not to 'unlawfully
adjust[]" driver logs and reports in violation of DOT regulations." ECF
No. 45, at 23. While Plaintiffs' brief goes on to offer a detailed
response to Defendant's DOT argument, it does not address the other four
breach theories raised by Defendant in support of summary judgment.

than independent contractors, Plaintiffs advance the following two "disputed" facts: (1) "The true relationship between FedEx and the independent contractor was purposely not disclosed"; and (2) "FedEx owned and controlled nearly all of the contractor's business activities." ECF No. 45, at 7-8. However, as argued by Defendant, such broad factual assertions and limited evidence cited by Plaintiffs in support, fail to identify the contractual provision that FedEx purportedly violated and further fail to advance facts that would permit a reasonable juror to conclude that a contractual breach occurred.[21] Moreover, there is no evidence cited that could support a claim for damages as Plaintiffs fail to articulate facts evidencing how alleged treatment as an "employee," rather than treatment as an independent contractor, actually harmed Plaintiffs.

---

[21] The first statement of fact, and citations thereto, appears largely irrelevant to a breach of contract theory as it focuses solely on false representations, not contractual violations. Moreover, the only evidence cited in support of this factual assertion is: (1) the following statement made by Mr. Simon during his deposition: "After signing the contract, it ended up being superior/inferior, Orbit Corp. being the inferior, Federal Express being the superior," Simon Tr. 32:25-33:2; and (2) a sworn statement from Simon's sister documenting her experience as a FedEx contractor beginning on September 29, 2012, with the excerpt from such affidavit quoted in Plaintiffs' brief reflecting Ms. Fann's false promises to Simon's sister that FedEx would be a "business partner" to her company. The only evidence cited in support of the second factual assertion are several pages of the transcript from Ms. Fann's deposition discussing: (1) affirmative steps taken by FedEx to ensure that its contractors met DOT regulations regarding their trucks (such as grounding non-complying vehicles); (2) the "FedEx" decals that contractors were required by contract to place on their delivery vehicles; and (3) FedEx's involvement in drug-testing drivers employed by FedEx contractors. Fann Tr. 204-09, at ECF No. 51-1. As a matter of law, these limited evidentiary citations fail to demonstrate a genuine dispute as to a material fact relevant to this breach of contract theory.

While Plaintiffs do point to some evidence in _other portions of their brief_ indicating that FedEx participated in Orbit's hiring process to ensure that Orbit's employees complied with DOT and/or contractual standards, and monitored Orbit's vehicles to ensure that they met DOT and/or contractual standards, what is conspicuously missing from Orbit's presentation of evidence in support of its breach of contract claim is evidence suggesting that FedEx breached its contract _with Orbit_ by improperly disqualifying one of _Orbit's_ current or prospective employees that otherwise met the contractual standards, or improperly grounding _Orbit's_ vehicles that otherwise met contractual standards.[22]   See Fed. R. Civ. P. 56(c)(1)(A) (indicating that a party "must" support its factual position with citations to "particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations . . . admissions, interrogatory answers, or other materials").   Additionally, similar to the discussion above addressing Plaintiffs' fraud claim, _generalized evidence_ suggesting that the local FedEx managers at times mistreated

---

[22] Not only is there a lack of direct or circumstantial evidence highlighted by Plaintiffs sufficient to demonstrate a contractual breach through FedEx's _improper_ grounding of Orbit vehicles or _improper_ rejection of Orbit employees, there is no evidence highlighted by Plaintiffs suggesting that FedEx did in fact ground an Orbit vehicle (properly or improperly) or reject an Orbit employee (properly or improperly). Moreover, as highlighted by Defendant, Mr. Simon testified in his deposition, and confirmed in his summary judgment responses, that in late November of 2012 he was able to borrow two vehicles from his sister and _hire two additional drivers_ to service his 23455 Zip Code during the "peak season." Simon Tr. 120; Resp. to Def.'s SUF ¶ 26.

contractors cannot support a reasonable juror in concluding that FedEx breached its contract with Orbit in the absence of evidence that: (1) FedEx breached a contractual provision with respect to its dealings with Orbit; and (2) that Orbit suffered damages as a result of such breach.  See Othentec, 526 F.3d at 140 (indicating a genuine issue of fact cannot be created through "the building of one inference upon another").  As Orbit's limited evidence in opposition to summary judgment on this issue, offered in outline form without any argument in support, falls far short of such showing, summary judgment is properly entered in Defendant's favor.  See Law Enf't All. of Am., Inc. v. USA Direct, Inc., 56 F. App'x 147, 148 (4th Cir. 2003) ("The nonmoving party's evidence must be probative, not merely colorable, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), cannot be 'conclusory statements . . . without specific evidentiary support,' Causey v. Balog, 162 F.3d 795, 801-02 (4th Cir. 1998), cannot be hearsay, Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996), and must 'contain admissible evidence and be based on personal knowledge.' Id.") (omission in original).

Although the Fourth Circuit requires this Court to review a summary judgment motion "even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law," Stevenson v. City of Seat

Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) (citation
omitted), this Court has met such obligation on this issue, and
the other matters discussed below that the Court views as
"abandoned." Defendant's filings highlight the apparent absence
of facts in support of elements on which Plaintiffs would bear
the burden of proof at trial, and Plaintiffs have presented no
effective response demonstrating a genuine dispute as to a
material fact. See Cray Commc'ns, Inc., 33 F.3d at 394
(agreeing with the district court's grant of summary judgment in
a case where the movant's summary judgment motion asserted that
the non-movant lacked evidence necessary to prove its case and
"[i]n its opposition, [the non-movant] made no effort to call
the court's attention to evidence in the record that [the
movant] had overlooked"); see also Muhammad, 108 F. App'x at 764
("[A] court is not required to scour the record in search of
evidence to defeat a motion for summary judgment." (quoting
Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001))).
Summary judgment in Defendant's favor is therefore appropriate.

### b. FedEx Improperly Deducted Fees/Expenses

Plaintiffs' brief in opposition to summary judgment fails
to respond to Defendant's assertion that Plaintiffs lack
evidence to demonstrate that FedEx breached the OA based on its
actions associated with the BSP and/or deductions taken from
payments owed to Orbit. Plaintiffs' failure includes both a

48

failure to present argument on these issues and a failure to present any facts or evidence relevant to such issues. Accordingly, such claims have unquestionably been abandoned by Plaintiffs. Moreover, even if the claims associated with the BSP and FedEx deductions are not waived or abandoned, summary judgment in Defendant's favor is proper based on the absence of evidence supporting Plaintiffs' claims. Cray Commc'ns, Inc., 33 F.3d at 394.

### c. FedEx Improperly withheld approval of the transfer of Orbit's FedEx PSAs to Mr. Taylor

Defendant's summary judgment motion argues that, after discovery, Plaintiffs lack evidence to support the claim that FedEx breached the OA based on its failure to approve the proposed transfer of Orbit's PSAs to Mr. Taylor. ECF No. 39, at 27. In their responsive pleading, Plaintiffs failed to address such claim in the argument section of their opposition brief. Rather, as already discussed, Plaintiffs' argument section is devoted primarily to Plaintiffs' fraud claim, and the limited section addressing alleged contractual breaches addresses only the DOT claim and a "due process" claim associated with FedEx's decision not to renew Orbit's OA.

Moreover, even if Plaintiffs' listing of "disputed facts" can be construed as a proper opposition to summary judgment as to those facts squarely presented, Plaintiffs identify three

discrete categories of relevant disputed facts, none of which are associated with the attempted sale of Orbit's PSAs. ECF No. 45, at 7-9. Accordingly, as with the BSP/improper deduction claims, the record plainly reveals that Plaintiffs have waived/abandoned their substantive claim for relief based on FedEx's decision not to approve Plaintiffs' proposed transfer of his PSAs to Mr. Taylor. Plaintiffs' failure to respond to Defendant's summary judgment argument on this issue is appropriately deemed a waiver for two primary reasons: (1) Plaintiffs, who are assisted by counsel, acknowledge that Defendant moved for summary judgment as to five separate potential breach of contract theories, yet they respond only to the breach theory associated with DOT regulations; and (2) Plaintiffs' failure to marshal its argument into a clearly identified position in opposition to summary judgment deprives Defendant of the opportunity to rebut or otherwise attack Plaintiffs' position/evidence on such issue in its reply brief. See Neitzke v. Williams, 490 U.S. 319, 329-30 (1989) (discussing the importance of notice in the adversarial process as it alerts the opposing party to "the legal theory underlying" the dispute before the court, which "enable[s] him meaningfully to respond by opposing the motion"; further explaining that "[t]he adversarial process also crystallizes the pertinent issues and facilitates appellate review").

Alternatively, the Court finds that even if such claim is not waived/abandoned, summary judgment is proper because Plaintiffs fail to highlight evidence that could permit a reasonable juror to enter a verdict in Plaintiffs' favor. Stated differently, in the absence of <u>citations to record evidence</u> in opposition to Defendant's express claim that summary judgment is appropriate on this issue, a reasonable juror could not conclude that FedEx unreasonably[23] withheld approval of Orbit's proposed transfer. See <u>Cray Commc'ns, Inc.</u>, 33 F.3d at 394 (affirming the grant of summary judgment in a case where the non-movant failed to effectively rebut the movant's assertion of a lack of evidence supporting the non-movant's claims, noting that the non-movant's "legal memorandum devoted fewer than three pages to the . . . claim [at issue] and did not refer the district court to any competent record evidence"). Accordingly, summary judgment in Defendant's favor is warranted.[24]

---

[23] Pursuant to the terms of the OA: (1) the contractor "may assign [the OA] or otherwise transfer its rights or obligations in a PSA . . . with the prior written consent of [FedEx]"; and (2) FedEx shall not "unreasonably" withhold consent. OA Addendum 16 ¶ 7. The OA goes on to state in the same section that the parties agree that withholding consent will "not be deemed unreasonable" if the proposed assignment/transfer "would result in the inability of a contractor to achieve the results contracted for in the Agreement." <u>Id.</u>

[24] The Court acknowledges the fact that Plaintiffs' brief makes several "passing mentions" to FedEx's refusal to approve the transfer to Mr. Taylor; however, such references are insufficient in form and in substance. See <u>Muhammad</u>, 108 F. App'x at 764 (suggesting that a "passing mention" in a brief was insufficient to present a legal claim to the district court). The primary inadequacy stems from the fact that the proper functioning of the adversarial process requires Plaintiffs to clearly present their claim/evidence if they seek to pursue substantive

Case 2:14-cv-00607-MSD-RJK Document 71 Filed 11/08/16 Page 52 of 57 PageID# 1531

### 3. Orbit did not Receive "Due Process" During Non-renewal of its Contract

As indicated above, Plaintiffs' statement of disputed facts in their opposition to summary judgment and Plaintiffs' argument section of their brief both advance a claim that a breach of contract occurred based on FedEx's failure to renew Orbit's OA at the conclusion of the initial one-year term. More specifically, Plaintiffs' argument section asserts that they "did not receive due process" during the OA renewal process because Plaintiffs were not timely informed of the fact that FedEx had been compiling adverse "Business Discussion Records"

___

relief on this theory because, absent such presentation, Defendant lacks a meaningful opportunity to respond. Neitzke, 490 U.S. at 329-30. Plaintiffs' scattered references to Mr. Taylor are plainly insufficient to warrant a response from Defendant as they appear in the following context: (1) in support of Plaintiffs' challenge to FedEx's decision not to renew Plaintiffs' OA for a second year, Plaintiffs claim that FedEx provided "arbitrary" reasons for denying Orbit's efforts to transfer its PSAs to Mr. Taylor (such assertion is presumably advanced as circumstantial evidence of FedEx's negative attitude toward Simon in early 2013), ECF No. 45, at 8; Fann Tr. 63:1-25, ECF No. 49-3; (2) in the section of Plaintiffs' brief addressing damages, Plaintiffs again make reference to the attempted assignment to Mr. Taylor being denied for arbitrary reasons (such assertion appears to be advanced in an effort to demonstrate that Plaintiffs attempted to mitigate damages), ECF No. 45, at 25; ECF No. 54-1; and (3) similarly, in response to Defendant's statement of facts that appear directed at Plaintiffs' alleged failure to mitigate damages, Plaintiffs assert that Mr. Taylor was more qualified than Simon's sister, has an "impeccable business record," and "was completely qualified" to purchase Orbit's PSAs. ECF No. 45, at 14; Simon Tr. Pt. 2 52-53:1-15, ECF No. 55-1. In addition to such references appearing in contexts unrelated to a substantive claim for relief, the cited evidence is alternatively rejected as insufficient to support a verdict in Plaintiffs' favor on such a theory as it neither points to evidence of an "arbitrary" decision nor does it document Mr. Taylor's business record or his qualifications to be a Fed Ex contractor. Rather, Plaintiffs' brief cites to: (1) a partial excerpt from Ms. Fann's deposition regarding the reasons she rejected the transfer to Mr. Taylor; (2) Ms. Fann's written justification explaining FedEx's decision to reject such transfer; and (3) a portion of Mr. Simon's deposition indicating that Mr. Taylor is a lawyer and Mr. Simon's sister has a bachelor's degree and was previously a hairdresser.

during Orbit's term of performance.[25]  As set forth below, even after accepting Plaintiffs' facts as true and drawing inferences in Plaintiffs' favor, the instant claim clearly fails at the summary judgment stage.

First and foremost, as argued by Defendant, ECF No. 61, at 12 n.9, Plaintiffs' breach of contract claim based on an alleged "due process" violation associated with Fed Ex's failure to renew the OA was asserted for the first time in Plaintiffs' brief in opposition to summary judgment, and because Plaintiffs have not moved to amend their second amended complaint to advance such a claim, it is not properly before this Court, ECF No. 26; see Harris v. Reston Hosp. Ctr., LLC, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that the district court "did not err in refusing to consider" the plaintiff's "new legal theory [raised] for the first time in opposing summary judgment," noting that the "complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce" and that permitting "constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant") (internal quotation marks and citations omitted).

---

[25] The bulk of Plaintiffs' facts in support of such argument appear to be directed at establishing either: (1) that Orbit was successfully satisfying its contractual duties while the OA was in force; or (2) that FedEx created "Business Discussion Records" and later prevented Orbit from challenging them.  ECF No. 45, at 8.

Second, even if a "due process" claim, or other breach of contract claim predicated on non-renewal of the OA, is properly before the Court, Plaintiffs: (1) fail to identify a contractual (or constitutional) right to "due process" in this private contract context; and (2) fail to otherwise point to a provision of the contract that was breached based on FedEx's decision not to renew Orbit's OA.  Importantly, the express language of the OA states that the "initial term" of the contract was for "one year" and that such term would automatically renew for successive one-year terms "unless Contractor or [FedEx] provides the other party notice of non-renewal in writing at least 30 days prior to the expiration of the initial term or any successive renewal term."  OA ¶ 8.  Plaintiffs fail to identify any provision within the OA placing limitations on <u>either party's discretion</u> regarding renewal, and they similarly fail to identify a written provision linking the quality of a contractor's performance with FedEx's renewal decision. Accordingly, even if, as suggested by Plaintiffs, FedEx opted not to renew Orbit's contract at the expiration of the one-year term because Ms. Fann or other FedEx managers considered Simon to be "a problem to the FedEx corporation," and/or if it was not renewed because Ms. Fann, or others, found working with Simon to be difficult, Plaintiffs fail to allege a breach.  Stated differently, Plaintiffs' argument on this issue fails as a

matter of law because the OA expressly states that the parties'
business relationship had a one-year lifespan (unless renewed)
and either party had the express contractual right to elect not
to renew.[26]

Third, Plaintiffs fail to demonstrate that they suffered
compensable damages as a result of an alleged FedEx breach.
Notably, notwithstanding any subjective beliefs that Mr. Simon
may have had regarding his desire/intention to have a long-term
business relationship with FedEx, because the express terms of
the OA clearly state that FedEx promised nothing more than a
one-year initial term, FedEx is not legally responsible for any
losses arising out of the fact that the business relationship
did in fact only last one year.  Therefore, even if it is
assumed that Orbit suffered a loss on the sale or transfer of
its delivery trucks, PSAs, or other assets in the months
following FedEx's decision not to renew Orbit's OA, because
Plaintiffs lack evidence sufficient to demonstrate that FedEx's
non-renewal decision was a material breach of the contract
terms, FedEx is not legally responsible for any losses suffered

---

[26] In support of summary judgment, Defendant submitted and cited to a
"Contract Non-Renewal Review Notification Letter."  ECF No. 40-6.  Such
letter indicates that Ms. Fann was submitting Orbit's "contract file" to
her manager, Rochelle Martin, and representatives of FedEx's corporate
office for a final determination on whether Orbit's OA should be renewed.
In opposition to summary judgment, Plaintiffs do not produce a deposition
excerpt or any other evidence associated with Ms. Martin (or any FedEx
corporate officer's) decision not to renew Orbit's OA.  Accordingly, while
the Court's analysis assumes, in Plaintiffs' favor, that personal motives
may have played a factor in FedEx's renewal decision, there is arguably a
complete lack of evidence demonstrating the true basis for non-renewal.

by Plaintiffs.[27] Cf. Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623, 631-32 (4th Cir. 1977) (noting, in a case applying Maryland law, that the plaintiffs could not "reasonably have relied upon" allegedly fraudulent statements indicating that the other party "would not exercise its contractual right of non-renewal at the end of successive yearly lease terms" because such alleged promise was "clearly belied by the language of the written agreement between the parties" which provided "for a one-year, renewable, business relationship"). Accordingly, even when the record evidence cited by the parties is viewed in Plaintiffs' favor, no reasonable juror could find that FedEx's non-renewal of the OA was a breach and/or that Plaintiffs suffered resultant damages.

For all of the above stated reasons, Plaintiffs' breach of contract claim fails as a matter of law. Plaintiffs fail to oppose summary judgment as to multiple potential breach of contract theories raised by Defendant, and as to those matters that were opposed, Plaintiffs fail to point to evidence that could support a reasonable juror in returning a verdict in their favor. Plaintiffs' failure of proof is most pronounced with

---

[27] Plaintiffs assert that, as a result of FedEx's failure to renew Orbit's OA and the subsequent transfer of Orbit's physical assets and routes to Simon's sister's company, Simon has outstanding debts to his sister and other family members. ECF No. 45, at 9, 25-26. While the analysis above assumes that Plaintiffs did in fact suffer losses during the transfer of Orbit's assets to Simon's sister's company, the Court notes that the evidence cited by Plaintiffs raises questions as to whether such transaction was at "arm's length." ECF No. 49-2, at 5.

respect to their failure to identify a contractual provision that was breached (as well as failure to cite to evidence in support of such breach) and failure to advance evidence that could reasonably support a finding that Plaintiffs were damaged as a result of an alleged breach.

### IV. Conclusion

As detailed above, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiffs' claims for fraud and breach of contract. At Plaintiffs' express request, Plaintiffs' FLSA claim is deemed **WITHDRAWN**. Because all claims previously in dispute in this action have now been resolved, the Clerk is **REQUESTED** to enter judgment in favor of Defendant.

The Clerk is further **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November  8  , 2016